**CHAULK SERVICES, INC.,**
Plaintiff–Appellant,

v.

**MASSACHUSETTS COMMISSION
AGAINST DISCRIMINATION,**
et al., Defendants–Appellees.

No. 95–1249.

United States Court of Appeals,
First Circuit.

Heard Aug. 2, 1995.

Decided Nov. 27, 1995.

Arthur P. Menard, with whom Paul J. Murphy and Menard Murphy & Walsh were on brief, for appellant.

Macy Lee, Assistant Attorney General, with whom Scott Harshbarger, Attorney General of Massachusetts, was on brief for appellee Massachusetts Commission Against Discrimination; Katherine McClure on brief for appellees Petrina Doulamis/Sullivan and International Association of EMTs & Paramedics, NAGE and AFL–CIO.

Before TORRUELLA, Chief Judge, LYNCH, Circuit Judge, and CASELLAS,* District Judge.

CASELLAS, District Judge.

Plaintiff-appellant Chaulk Services, Inc. ("Chaulk") originally brought this action for declaratory judgment, preliminary and permanent injunctive relief against the Massachusetts Commission Against Discrimination ("MCAD") ("the Commission"), Petrina Doulamis/Sullivan ("Doulamis") and the International Association of EMTs & Paramedics, NAGE, AFL–CIO ("the Union"), to prevent defendants-appellees from proceeding with the case of *Doulamis v. Chaulk Services, Inc.*, 93–BEM–2145, then pending before the MCAD, on the basis that the action was preempted by federal law, particularly, the National Labor Relations Act ("NLRA") ("the Act"), 29 U.S.C. § 151 *et seq.* The district court abstained from deciding Chaulk's preemption claim, citing *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) and *Brotherhood of Locomotive Engineers v. MCAD*, 695 F.Supp. 1321 (D.Mass.1988), and consequently dismissed Chaulk's complaint. We vacate the judgment below and remand the case to the district court.

## I. STATEMENT OF THE CASE

### A. Facts

In the middle of 1993, the International Association of EMTs and Paramedics,

---

* Of the District of Puerto Rico, sitting by designation.

NAGE, AFL–CIO, began a union organization campaign at Chaulk. Doulamis became involved in the campaign sometime during the fall of 1993, when she and Eric Burgess, a male Chaulk employee, wrote a letter to the president of Chaulk's parent company calling for the organization of a union. On November 10, 1993, Chaulk's CEO Nicholas O'Neil and Joseph Gilmore, vice-president, as part of their own campaign against the union organization effort, met with Doulamis in an attempt to pressure her into becoming a non-union advocate. Doulamis declined their invitation.

As a result of this meeting, the Union filed unfair labor practice charges on November 29, 1993 with the National Labor Relations Board ("NLRB") against Chaulk, claiming that it coerced and intimidated Doulamis, a known union organizer, by questioning her regarding union activities and threatening retaliation for those union activities, in violation of the Act. On December 6 and 9, 1993, the Union filed two additional charges with the NLRB, both of which alleged that Chaulk interfered with Doulamis' labor activity rights and discriminated against her because of her union organization efforts.[1]

Thereafter, the NLRB issued a complaint against Chaulk alleging specific violations of §§ 8(a)(1) and (3) of the NLRA, and charging that Chaulk had interfered with, restrained and coerced several employees, including Doulamis, in the exercise of rights guaranteed by § 7 of the Act. With respect to Doulamis, the complaint alleged that on November 29, 1993 Chaulk issued a written warning and on December 7, 1993 issued a letter addressed to Doulamis threatening her with discipline if she attended any future 401(K) meetings held by Chaulk with its employees. In addition, the complaint charged that on December 2, 1993, Chaulk suspended the coauthor of the pro-union letter, Eric Burgess. According to the complaint, Chaulk engaged in this conduct because it mistakenly believed that Doulamis,

together with several of her fellow employees, had engaged in misconduct arising out of union or other protected concerted activity. See Complaint and Notice of Hearing at ¶s 7–8. It is also alleged that these employees formed, joined and assisted the Union and otherwise engaged in concerted activities, and that Chaulk's conduct was a deliberate attempt to discourage the employees from engaging in these activities, in violation of sections 8(a)(3) and (1) of the Act. See Complaint and Notice of Hearing at ¶s 7–10.

A full and comprehensive settlement agreement was reached between Chaulk and the NLRB in March 1995 regarding these claims. As part of the settlement, Chaulk agreed to, inter alia, expunge from its files any reference to the transfer of Eric Burgess; the written warnings set forth in the complaints of Doulamis, Richard Graham, Chris Adler, Gary Winitzer, Jim Taubert and Jean Taubert; the suspensions of Eric Burgess, Chris Adler, Jim Taubert, Jean Taubert, Gary Winitzer, Michael Cook, Kathryn Edwards and James McLaughlin; and the terminations of Fran Wilkerson, John Borden and McLaughlin. In addition, Chaulk agreed to pay out approximately $12,000 in back pay to these employees.

Meanwhile, on December 1, 1993, after the Union had already filed its first charge with the NLRB, Doulamis filed a complaint with the MCAD against Chaulk, claiming she had been a victim of unlawful sex discrimination. Specifically, she complained of being harassed about her union activity, allegedly because of her gender, in that the "males who are also involved [in the union activity] are not being harassed."

On February 18, 1994, Chaulk moved to dismiss Doulamis' complaint at the MCAD for lack of jurisdiction, on the grounds that it was preempted by federal law. On May 13, 1994, the MCAD issued an order denying the motion to dismiss and retaining jurisdiction over Doulamis' discrimination claims, reason-

---

1. The Union filed several additional unfair labor practice charges against Chaulk stemming from its alleged interference with the protected rights of numerous other employees. Here, we refer in particular only to those which, according to the parties, involve charges of unlawful conduct di-

rected against Doulamis. Furthermore, while Doulamis is not named as the aggrieved employee in these charges, both parties agree that the employee referred to therein is, in fact, Doulamis.

ing that it did not have to address the merits of the underlying labor dispute in order to resolve the allegations of gender discrimination. The Commission then promptly issued a set of interrogatories to Chaulk, requesting detailed information about all known union organizers, their role in organizing efforts and any significant acts of union organizing known to appellant, including copies of any communications between Chaulk and Doulamis relative to the union organization effort.

## B. Proceedings Below

The present action was filed in the United States District Court for the District of Massachusetts on December 8, 1994, seeking a declaratory judgment as well as an injunction barring the continued prosecution of Doulamis' complaint before the MCAD. Chaulk claimed that the Commission's assertion of state authority over her charge directly threatened and significantly interfered with the jurisdiction of the NLRB. As noted above, the district court granted MCAD's motion to dismiss on abstention grounds. It did not decide the preemption issue. Chaulk now appeals the district court's judgment.

## II. *ANALYSIS*

### A. Preemption

Relying on the doctrine of preemption first enunciated in *San Diego Building Trades v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), appellant argues that the district court erred in allowing the Commission's motion to dismiss on the grounds of *Younger* abstention and that it should have decided the preemption issue. Citing primarily to *Bud Antle, Inc. v. Barbosa*, 35 F.3d 1355 (9th Cir.1994), Chaulk asserts that when it is clear that the state tribunal is acting beyond the lawful limits of its authority, there is no principle of comity that is served by abstention. *Id.* at 1356. Accordingly, it urges us to find the *Younger* abstention doctrine inapplicable to this case, address the merits of its preemption claim, and declare that appellee's charge of sex discrimination before the Commission is indeed preempted by federal law.

We begin by delineating the present scope of the so called *Garmon* preemption doctrine. The Supreme Court held in *Garmon* that when an activity is arguably subject to § 7 or § 8 of the National Labor Relations Act, the states as well as the federal courts must defer to the exclusive competence of the NLRB if the danger of state interference with national labor policy is to be averted. *Id.* 359 U.S. at 245, 79 S.Ct. at 779–80. When Congress enacted the NLRA, it enacted comprehensive procedural rules and created the NLRB to administer this specially designed regulatory structure. The result was a complex and interrelated scheme of federal law, remedies and administration designed to achieve uniformity in our national labor policy. *Garmon*, 359 U.S. at 242, 79 S.Ct. at 778; *New York Telephone Co. v. New York Dept. of Labor*, 440 U.S. 519, 527, 99 S.Ct. 1328, 1334, 59 L.Ed.2d 553 (1979); *Jones v. Truck Drivers Local Union No. 299*, 838 F.2d 856, 872 (6th Cir.1988) (Merritt, J., concurring in part and dissenting in part).

■ In order to achieve the desired uniformity, Congress entrusted the interpretation and enforcement of the NLRA to a centralized administrative agency, armed with its own procedures, and equipped with its specialized knowledge and cumulative experience. *See Garmon*, 359 U.S. at 242, 79 S.Ct. at 778. This administrative scheme was designed to avoid the danger of conflicting or incompatible adjudications such as would inevitably result from having multiple forums, with their diverse procedures, entertain claims under the NLRA. *Garner v. Teamsters, Chauffeurs and Helpers Local Union No. 776*, 346 U.S. 485, 490–91, 74 S.Ct. 161, 165–66, 98 L.Ed. 228 (1953). The *Garmon* rule is therefore intended to preclude state interference with the NLRB's interpretation and enforcement of the integrated scheme of regulation established by the NLRA. *Golden State Transit Corp. v. City of Los Angeles*, 475 U.S. 608, 613, 106 S.Ct. 1395, 1398, 89 L.Ed.2d 616 (1986).

■ Withal, the *Garmon* rule admits of some exceptions to the NLRB's primary jurisdiction. For instance, where the conduct at issue is of only "peripheral concern" to federal labor policy, the states are not precluded

from regulating the activity. *Garmon*, 359 U.S. at 243, 79 S.Ct. at 778–79. Similarly, state action is not preempted where the regulated conduct touches interests "so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, courts cannot infer that Congress has deprived the states of the power to act." *Id.*[2]

■ When called to determine whether these exceptions apply, courts must balance the state's interest in remedying the effects of the challenged conduct against both the interference with the NLRB's ability to adjudicate the controversy and the risk that the state will approve conduct that the NLRA prohibits. *Belknap, Inc. v. Hale*, 463 U.S. 491, 498–499, 103 S.Ct. 3172, 3177, 77 L.Ed.2d 798 (1983); *NLRB v. State of Ill. Dept. of Emp. Sec.*, 988 F.2d 735, 739 (7th Cir.1993). In doing so, we intentionally focus on the conduct at the root of this controversy, namely Chaulk's alleged interference with Doulamis' union activities, as opposed to the descriptive title of sex discrimination given to her cause of action before the MCAD. That is because preemption is designed to shield the system from conflicting regulation of *conduct*. "It is the conduct being regulated, not the formal description of governing legal standards that is the proper focus of concern." *Amalgamated Ass'n of St., E.R. & M.C. Emp. v. Lockridge*, 403 U.S. 274, 292, 91 S.Ct. 1909, 1920, 29 L.Ed.2d 473 (1971). *See also, Garmon*, 359 U.S. at 246, 79 S.Ct. at 780 ("It is not the label affixed to the cause of action under state law that controls the determination of the relationship between state and federal jurisdiction").

■ Doulamis' complaint highlights the risk that a state cause of action will touch on an area of primary federal concern. She complains of incidents of interference with her union activities as a union organizer. The very same conduct provides the factual basis for the unfair labor practice charges brought by the Union on her behalf, which were eventually incorporated into the complaint and notice of hearing issued by the NLRB. Her claims are fundamentally grounded in an assertion that the rights which her employer interfered with involve her union activity. Where, as here, the case involves conduct arguably prohibited by § 8 of the Act, the NLRB has broad authority to determine the appropriate remedy for wronged employees.[3] "In fact, since remedies form an ingredient of any integrated scheme of regulation, to allow the state to grant a remedy here which has been withheld from the NLRB only accentuates the danger of conflict." *Garmon*, 359 U.S. at 247, 79 S.Ct. at 781; *Richardson v. Kruchko & Fries*, 966 F.2d 153, 157 (4th Cir.1992). Board authority over claims of interference with union activities is not merely of peripheral concern to the Act. Rather, the Board's authority to remedy such practices is central to its purpose. *See Tamburello v. Comm–Tract Corporation*, 67 F.3d 973, 978 n. 5 (1st Cir.1995).

Moreover, the fact that the Union clearly considered Chaulk's conduct an unfair labor practice, and that the Board entertained such

---

2. Courts have recognized a third exception to the *Garmon* doctrine where Congress has expressly carved out such an exception to the NLRB's primary jurisdiction. *See Tamburello v. Comm–Tract Corporation*, 67 F.3d 973, 977 (1st Cir. 1995) (citing *Vaca v. Sipes*, 386 U.S. 171, 179–80, 87 S.Ct. 903, 910–11, 17 L.Ed.2d 842 (1967); *Brennan v. Chestnut*, 973 F.2d 644, 646 (8th Cir.1992)). Congress has not made an exception to the NLRB's primary jurisdiction for claims alleging sex discrimination in the context of an unfair labor practice. *See Jones v. Truck Drivers Local Union*, 838 F.2d at 861 (sexual discrimination is a breach of duty of fair representation and within scope of § 8 of the NLRA); *NLRB v. Local 106*, 520 F.2d 693 (6th Cir.1975) (same). This exception therefore does not apply to the facts in this case.

3. MCAD presses the argument that gender-based discrimination is not even within the realm of prohibited activities under the NLRA. According to MCAD, the scope of prohibited discrimination under the Act is limited to discrimination based on union activities or membership. Still, the argument has been made successfully that sexual discrimination constitutes an unfair labor practice under § 8 of the NLRA. *See Jones v. Truck Drivers Local Union*, 838 F.2d at 861 (sexual discrimination is a breach of duty of fair representation and within scope of § 8 of the NLRA); *NLRB v. Local 106*, 520 F.2d 693 (6th Cir.1975) (same).

charges, only buttresses the Court's conclusion that said conduct is not only "arguably", but obviously prohibited under section 8(a) of the NLRA. It also highlights the very real danger of interference with the NLRB's jurisdiction, as it was precisely the Board's timely intervention which in this case led to the agreement through which Chaulk pledged, among other things, not to engage in the challenged conduct, or take similar actions to hinder its employees in their union activities.

Significantly, the Supreme Court has held that in cases where the underlying conduct is arguably prohibited by the NLRA, application of the so-called "local interests" exception hinges, in the first place, upon the existence of a significant state interest in protecting its citizens from the challenged conduct. In second place, the controversy which could be presented to the state court must be different from that which could have been presented to the NLRB. *Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters*, 436 U.S. 180, 196–97, 98 S.Ct. 1745, 1757–58, 56 L.Ed.2d 209 (1978). *See also, Tamburello v. Comm–Tract Corporation*, 67 F.3d 973, 980 (1st Cir.1995).

Under the *Sears* rationale, the critical inquiry is whether the controversy presented to the state court is identical to or different from that which could have been presented to the NLRB.[4] *Sears*, 436 U.S. at 197, 98 S.Ct. at 1757–58. The Court reasoned that it is only in the former situation that a state's exercise of jurisdiction necessarily involves a risk of interference with the unfair labor practice jurisdiction of the Board which the *Garmon* doctrine was designed to avoid. *Id.* We assume *arguendo* that the Commonwealth of Massachusetts has a significant interest in protecting its citizens against sex discrimination in their employment. Following the guidelines set forth by the Supreme Court in *Sears*, we therefore examine whether the controversy before the state forum would indeed be the same as that which could be brought before the NLRB. *Id.*

In this regard, it is telling that the Union, upon learning of Chaulk's alleged interference with Doulamis' activities as a union organizer, promptly filed an unfair labor practice charge on her behalf, claiming violations of § 8 of the Act—thereby clearly characterizing the controversy as a labor dispute, subject to the NLRB's primary jurisdiction. For its part, the NLRB received the Union's allegations regarding Chaulk's conduct—the same conduct that would later form the basis for Doulamis' discrimination claim before the MCAD—investigated them, proceeded then to issue a Complaint and Notice of Hearing, and eventually settled the matter. Plainly, this is not a case where the NLRB declined to exercise its lawful jurisdiction over a labor controversy, or where the NLRB's actual exercise of jurisdiction remains a matter of speculation. On the contrary, the Board in this case moved aggressively to acquire such jurisdiction and bring the matter to a full and speedy resolution.

Furthermore, even Doulamis' own pleadings before the Commission couch her claims in terms of a labor dispute within the NLRB's primary jurisdiction. Her complaint accuses Chaulk of harassment "about [her] union activities." She also claims to have been "intimidated by Mr. O'Neil about involvement in union activity" and "accused of distracting the other employees with union activity." As noted above, such conduct on the part of Chaulk, if adequately established through competent evidence, would constitute an undue interference with Doulamis' rights under § 7 of the NLRA and consequently a violation of § 8(a)(1) of the Act.

---

4. We note that *Sears* is not entirely on point, as it differs from the instant case in at least one fundamental respect. In that case, the Court was presented with a situation where the party seeking relief in the state forum had no right to invoke the Board's jurisdiction and the party that had the right to invoke the Board's jurisdiction had failed to do so. The Court expressed concern that in the circumstances of that case, Sears may not have a chance for a hearing on its claims if state jurisdiction were preempted without any assurance that the dispute might eventually be brought before the NLRB. The Court reasoned that preemption was justified only when an aggrieved party has a reasonable opportunity either to invoke the Board's jurisdiction himself or else to induce his adversary to do so. *Id.* at 201, 98 S.Ct. at 1759–60. Here, of course, there is no such concern, as the Union filed the unfair labor practice charges with the NLRB even before Doulamis filed her gender discrimination claims before the Commission.

The application of additional remedies to the conduct here at issue only invites conflict. As the Supreme Court stated in *Garmon*, "[t]he obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy." *Id.* at 247, 79 S.Ct. at 780. *See Sears, Roebuck & Co.*, 436 U.S. at 193–94, 98 S.Ct. at 1755–56 ("[T]he pertinent inquiry is whether the two potentially conflicting statutes [are] brought to bear on precisely the same conduct.") (citations omitted). As discussed above, Doulamis' claim of sex discrimination is founded upon the identical facts which provided the basis for the unfair labor practices charge brought on her behalf by the Union. Accordingly, under the *Garmon* rationale, her claim before the Commission is expressly preempted.

Moreover, as pointed out by Chaulk, the interrogatory issued by the MCAD in the course of the investigation and prosecution of Doulamis' case belies the Commission's assertion that it need not delve into the labor aspects of the controversy in order to dispose of her gender discrimination claims. Rather, the interrogatory is further proof that issues of labor law ordinarily considered to be within the NLRB's primary jurisdiction are precisely the type of questions that lie at the heart of this controversy.

Finally, in order to determine the merits of Doulamis' claims of sex discrimination, the MCAD will have to decide whether in fact Doulamis was engaged in protected union activity, and if so, whether she was engaged in the same type of union activity as the other union organizers. Such a finding requires that the MCAD become embroiled in a factual and legal determination of what constitutes union activity, a task which has been expressly reserved to the jurisdiction of the NLRB. More importantly, if the Commission were allowed to entertain Doulamis' claim of sexual discrimination, there is the potential risk that it will incorrectly apply the substantive rules governing labor controversies laid out by Congress in the NLRA. It is precisely this potential for incompatible or conflicting adjudications that Congress sought to avoid by leaving these determinations in the first instance to the NLRB.

In the end, no recharacterization of this claim can obscure the fact that, at bottom, this is a classic example of an unfair labor practice claim of the kind traditionally handled in the first instance by the NLRB. Since the controversy before the MCAD and that resolved by the NLRB are the same in a fundamental respect, and the risk of interference with the Board's jurisdiction is obvious and substantial, we hold that the MCAD has no jurisdiction to entertain Doulamis' charge of sexual discrimination based on her employer's alleged interference with her union activities. *International Union of Operating Engineers v. Jones*, 460 U.S. 669, 674, 103 S.Ct. 1453, 1457–58, 75 L.Ed.2d 368 (1983).[5]

**B. Abstention**

We turn now to what is in essence the threshold issue in this appeal—whether the district court erred in abstaining under the *Younger* doctrine. In *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court held that a federal court should not enjoin a pending state criminal proceeding except in the very unusual situation that an injunction is necessary to prevent great and immediate irreparable injury. *Younger* stands for the proposition that principles of comity require "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States are left free to perform their separate functions in their separate ways." *Id.* at 44, 91 S.Ct.

---

5. The dissent devotes a considerable number of pages to the issue of whether Title VII and the NLRA provide concurrent remedies. The Supreme Court has made clear however, that when a state proceeding is claimed to be preempted by the NLRA under *Garmon*, the issue is a choice-of-forum rather than a choice-of-law question. *See International Longshoremen's Association v. Davis*, 476 U.S. 380, 391, 106 S.Ct. 1904, 1912,

90 L.Ed.2d 389 (1986). As such, "it is a question whether the State or the Board has jurisdiction over the dispute." *Id.* If—as here—there is preemption under *Garmon*, then state jurisdiction is extinguished. *Id. See also, International Union of Operating Engineers v. Jones*, 460 U.S. at 680–81, 103 S.Ct. at 1460–61; *Sears*, 436 U.S. at 199 n. 29, 98 S.Ct. at 1758 n. 29; *Garmon*, 359 U.S. at 245, 79 S.Ct. at 779–80.

at 750–51. The Court has since applied its reasoning in *Younger* to civil proceedings in which important state interests are involved. See *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); *Trainor v. Hernández*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977).

In *Ohio Civil Rights Comm'n v. Dayton Christian Schools*, 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986), the principles of comity first announced in *Younger* were made extensive to state administrative proceedings. As a result, where (1) vital state interests are involved, (2) in an ongoing state judicial (or administrative) proceeding, a federal court should abstain from exercising its jurisdiction over a claim, (3) unless state law clearly bars the interposition of the constitutional claims. See *Middlesex County Ethics Comm. v. Garden State Bar Assn*, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982); *Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979). "The pertinent inquiry is whether state proceedings afford an adequate opportunity to raise the constitutional claims." *Middlesex*, supra.

The dissent asserts that, rather than a principle of discretionary deference, *Younger* abstention *requires* a district court to abstain whenever a case falls within the doctrine's parameters. To the extent it relies on the Supreme Court's decision in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 816 n. 22, 96 S.Ct. 1236, 1246 n. 22, 47 L.Ed.2d 483 as support for this blanket rule, however, we respectfully differ. The cited passage on which the dissent relies clearly refers to that category of cases where federal jurisdiction has been invoked for the purpose of restraining state *criminal* proceedings. And even for that category of cases, the Supreme Court makes clear that abstention is only appropriate absent bad faith, harassment, or a patently invalid state statute. *Id.* at 816, 96 S.Ct. at 1245–46. In fact, *Colorado River* strongly reaffirmed the basic principle that abstention from the exercise of federal jurisdiction is the exception, not the rule:

"The doctrine of abstention, under which a district court *may* decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a district court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest. It was never a doctrine of equity that a federal court should *exercise its judicial discretion* to dismiss a suit merely because a State court could entertain it."

*Colorado River*, 424 U.S. at 813–14, 96 S.Ct. at 1244 (emphasis supplied; citations omitted). *See also, New Orleans Public Service, Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 359, 109 S.Ct. 2506, 2513, 105 L.Ed.2d 298 (1989).

The Commission argues that the case at bar fits squarely within the principles of *Younger* abstention. We disagree. First, the procedural posture of this case differs from that of the customary case where abstention is traditionally applied. Ordinarily, federal courts abstain from the exercise of jurisdiction over a particular controversy out of respect for an ongoing state proceeding begun before the federal action. It is thought that this procedural mechanism forestalls the friction that can arise when the business of the two systems—state and federal—overlaps. But the notion of comity, which to a great extent underlies the *Younger* doctrine of abstention, must accommodate the legitimate interests of *both* the state and national governments. *Younger*, 401 U.S. at 44, 91 S.Ct. at 750–51; *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 10, 107 S.Ct. 1519, 1525–26, 95 L.Ed.2d 1 (1987).

In abstaining, the court below seemingly focused on the situation that existed on December 8, 1994, when Chaulk's complaint for declaratory and injunctive relief was filed in the United States District Court for the District of Massachusetts. In doing so however, the court ignored the fact that an unfair labor practice charge, based on the same facts underlying Doulamis' complaint of sex

discrimination, had been filed against Chaulk *prior* to her discrimination claims and was pending before the NLRB at the time of the filing of her action before the Commission. In addition, shortly after Doulamis filed her action, additional charges were filed by the Union, and the Board continued to exercise its jurisdiction over these claims.

■ Federal courts seek to avoid needless conflict with state agencies and withhold relief by way of injunction where state remedies are available and adequate. *Alabama Public Service Commission v. Southern Railroad Co.*, 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951). But where Congress, acting within its constitutional authority, has vested a federal agency with exclusive jurisdiction over a subject matter and the intrusion of a state would result in a conflict of functions, the federal court may enjoin the state proceeding in order to preserve the federal right. *American Federation of Labor v. Watson*, 327 U.S. 582, 593–95, 66 S.Ct. 761, 766–67, 90 L.Ed. 873 (1946); *Bowles v. Willingham*, 321 U.S. 503, 510–11, 64 S.Ct. 641, 645–46, 88 L.Ed. 892 (1944); *Public Utilities Commission of Ohio v. United Fuel Gas Co.*, 317 U.S. 456, 468–70, 63 S.Ct. 369, 375–77, 87 L.Ed. 396 (1943).

This case is similar to *Freehold Cogeneration Associates, LP v. Board of Regulatory Commissioners of New Jersey*, 44 F.3d 1178 (3d Cir.1995). In that case, Freehold sought a declaratory judgment in the United States District Court for the District of New Jersey that the Board of Regulatory Commissioners of the State of New Jersey ("BRC") was preempted by the Federal Public Utility Regulatory Policies Act ("PURPA") from modifying the terms of a previously approved power purchase agreement between Freehold and Jersey Central Power and Light Company ("JCP & L"), a New Jersey public utility. Freehold also sought an order enjoining the ongoing BRC proceedings. The district court dismissed for lack of subject matter jurisdiction. On appeal, one of the arguments raised by JCP & L was that the federal court should abstain from resolving the merits of the case even if it was found to possess subject matter jurisdiction. The Third Circuit rejected the argument saying:

[O]ur concern is with carrying out a federal statutory scheme promoting the development of alternative energy sources. The alleged intrusive action is not by the federal government, but, on the contrary, by a state regulatory agency. We conclude that abstention is not appropriate in this case and does not warrant any extended discussion.

*Freehold Cogeneration*, 44 F.3d at 1187 n. 6. As in *Freehold*, we are concerned here with carrying out a federal statutory scheme, in this case one promoting the development of a uniform national labor policy. The alleged intrusive action is not by the federal government, but by the MCAD's purported regulation of conduct within the NLRB's jurisdiction.

We note that in the particular context of this case, the application of *Younger* abstention would result in significant prejudice to Chaulk, who entered into a comprehensive settlement agreement with the NLRB through which all unfair labor practice claims were resolved, subject to Chaulk's compliance with the conditions set forth therein, only to be faced with the prospect of having to defend its actions once again, this time before a state forum. Such an expansive interpretation of the abstention doctrine would have the effect of encouraging duplicative litigation, with the resultant waste of judicial and administrative resources, as well as the danger to federal-state relations that could result from conflicting adjudications.

■ Under these circumstances, where a federal agency with primary jurisdiction over the controversy has already exercised said jurisdiction, it would be inconsistent with the above mentioned principles of comity and equal respect for the interests of both the federal and state government for a federal court to abstain on *Younger* grounds from deciding a claim properly before it, in order to give way to a state administrative action filed *after* the federal proceedings are underway. Put simply, *comity works both ways.*

■ The Commission nevertheless urges us to extend the application of *Younger* and its progeny to the circumstances of this case. To this end, MCAD argues that the facts

before us satisfy the relevant three part test set out by the Supreme Court in *Middlesex*, 457 U.S. at 432, 102 S.Ct. at 2521. As it is however, even an analysis of the case within this framework leads us to the same conclusion. Abstention was improper in this case. We explain.

A number of courts have held that *Younger* abstention is inappropriate where a claim of preemption is "facially conclusive" or "readily apparent", because no significant state interests are served when it is clear that the state tribunal is acting beyond the lawful limits of its authority. *Bud Antle, Inc. v. Barbosa*, 35 F.3d 1355, 1365–66 (9th Cir.1994), as amended by, 45 F.3d 1261, 1272–73 (9th Cir.1994); *Gartrell Construction, Inc. v. Aubry*, 940 F.2d 437, 441 (9th Cir.1991) (citing *Champion International Corp. v. Brown*, 731 F.2d 1406 (9th Cir.1984); *National R.R. Passenger Corp. v. Florida*, 929 F.2d 1532, 1537 n. 12 (11th Cir.1991) (citing *Baggett v. Department of Professional Regulation*, 717 F.2d 521, 524 (11th Cir. 1983)); *Southwestern Bell Tel. v. Ark. Public Service Commission*, 824 F.2d 672, 673 (8th Cir.1987); *Kentucky W. Va. Gas Co. v. Pennsylvania Pub. Util. Comm'n*, 791 F.2d 1111, 1115 (3d Cir.1986). Chaulk asserts that the Commission is patently acting beyond its jurisdictional boundaries and therefore, no principle of comity precluded the district court from entertaining its claim of preemption on the merits. In response, the Commission cites the Supreme Court's decision in *New Orleans Public Service, Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) ("NOPSI") for the proposition that the mere assertion of a substantial constitutional challenge to state action, such as an argument of federal preemption engenders, will not alone compel the exercise of federal jurisdiction. Whatever the merits of MCAD's assertion however, even the *NOPSI* decision leaves open the possibility that a "facially conclusive" claim of preemption might render abstention inappropriate. *Id.* at 367, 109 S.Ct. at 2517–18. Consequently, we examine the merits of Chaulk's contention that abstention is also inappropriate because preemption is readily apparent in this context.

We have explained above the particularities of Doulamis' claims before the Commission. She complains of incidents of interference *with her union activities* as a *union organizer.* We have observed that the very same conduct provides the factual basis for the unfair labor practice charges brought by the Union on her behalf. We have also highlighted the fact that the NLRB incorporated these charges into a complaint and notice of hearing claiming violations to sections 8(a)(1) and 8(a)(3) of the NLRA. As we have noted, her claims are fundamentally grounded in an assertion that the rights which her employer interfered with involve her *union activity.*

Under these circumstances, were we to allow Doulamis' state claims to go forward by simply artfully pleading her claim of unfair labor practices as one motivated by a discriminatory animus because of her gender, we would be compromising the NLRB's role as chief arbiter of labor disputes. Indeed, there are few unfair labor practices which could not be similarly repackaged. Similarly aggrieved individuals could use such an opening to bypass the NLRB merely by ascribing a myriad of discriminatory motives to the relevant conduct (i.e. age, race, religious belief, etc.), thereby creating a system of labor dispute adjudication parallel to the NLRB, leaving the state and federal courts to grapple piecemeal with issues Congress intended primarily for NLRB resolution.

Faced with this particular factual scenario, we find that under the *Garmon* doctrine it is "readily apparent" that the Commission is acting beyond its jurisdictional authority by entertaining Doulamis' complaint, for it is readily apparent that Chaulk's conduct at issue is at least arguably prohibited by, and thus subject to the NLRA. Accordingly, we hold that abstention was inappropriate and that the district court abused its discretion when it dismissed Chaulk's complaint on the basis of *Younger* abstention.

## III. CONCLUSION

In sum, pursuant to the *Garmon* preemption doctrine, we find that Ms. Doulamis' claims are preempted by the NLRA, thereby depriving the MCAD of jurisdiction to enter-

tain her action based on gender discrimination. In addition, we find that abstention was inappropriate in this case, as the principles of comity and of equal respect for state and federal functions weighed against such an abdication of federal jurisdiction over the present controversy. Accordingly, Chaulk is entitled to injunctive relief, consistent with this opinion.

 Finally, with regard to MCAD's argument that the Eleventh Amendment bars Chaulk's claims against the Commission, we point out that the Supreme Court has recognized that the Eleventh Amendment does not preclude properly pleaded actions against state officials when the relief sought is prospective and equitable in nature. *See Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Will v. Michigan Department of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). We therefore reverse the judgment of the district court and remand the case, so that Chaulk may address any pleading deficiencies that currently preclude the continued prosecution of its petition for relief.

*Reversed and remanded.*

LYNCH, Circuit Judge, dissenting.

Because Congress has clearly expressed its intent to allow state anti-discrimination statutes to operate in areas such as this that may overlap with the National Labor Relations Act ("NLRA"), Petrina Doulamis/Sullivan's action is not, I believe, preempted. Because the federal courts are being asked to enjoin the Massachusetts Commission Against Discrimination ("MCAD") from hearing an ongoing gender discrimination action over which the state agency plainly has jurisdiction, I believe that abstention is appropriate. I respectfully dissent.

Under *San Diego Building Trades Council, Millmen's Union, Local 2020 v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), and its progeny, and in light of the clear congressional mandate under Title VII, 42 U.S.C.A. § 2000e to e–17 (West 1994 & Supp.1995), that state anti-discrimination

statutes have authority over claims for discrimination coextensive with Title VII, Doulamis' MCAD claim coexists with and is not displaced by the federal labor laws. The employer's defense here presents no "facially conclusive" claim for preemption. *See New Orleans Public Service, Inc. v. Council of City of New Orleans,* 491 U.S. 350, 367, 109 S.Ct. 2506, 2517–18, 105 L.Ed.2d 298 (1989). *Garmon* preemption is a question over which the state courts have concurrent jurisdiction and Chaulk Services, Inc. ("Chaulk") will have a full and fair opportunity to present the question to the Massachusetts courts. In my view, abstention is required under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

### I.

*Garmon* says that "[w]hen an activity is arguably subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board ["NLRB"] if the danger of state interference with national policy is to be averted." *Garmon,* 359 U.S. at 245, 79 S.Ct. at 780.[6] *Garmon* also says that this principle is not absolute. There is no need to defer to the NLRB where the conduct at issue is of "peripheral concern" to federal labor policy or where the state regulated activities touch "interests ... deeply rooted in local feeling and responsibility." *Id.* at 243–44, 79 S.Ct. at 779.

The Massachusetts anti-discrimination statute touches "interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, [courts cannot] infer that Congress [has] deprived the States of the power to act." *Garmon,* 359 U.S. at 244, 79 S.Ct. at 779. This is so whether or not invidious discrimination in employment can be described as being of "peripheral concern" to the NLRA. *Cf. Massachusetts Electric Co. v. Massachusetts Commission Against Discrimination,* 375 Mass. 160, 174, 375 N.E.2d 1192 (1978) (employment discrimination of peripheral concern to the NLRA); *Walker Mfg. Co. v. Industrial Commission,* 27

---

6. Sex discrimination is not specifically addressed in the NLRA and so it is not "clearly prohibited" by § 8 or "clearly protected" by § 7 of the NLRA.

Wis.2d 669, 681, 135 N.W.2d 307 (1965) (age discrimination of peripheral concern to Labor Management Relations Act). Originally enacted in 1946, the Massachusetts anti-discrimination statute, Mass.Gen.L. ch. 151B, §§ 1–10 (1994), is eighteen years older than Title VII. *See* 1946 Mass.Acts 368. It regulates conduct in employment in order to carry out the Commonwealth's interest in ensuring that its workplaces are free from particular categories of discrimination. It represents no less an exercise of Massachusetts' police power than building codes or fire regulations. The interests it protects are at least as weighty as the interests sought to be vindicated in actions the Supreme Court has specifically held not preempted by *Garmon.* *See Belknap, Inc. v. Hale*, 463 U.S. 491, 103 S.Ct. 3172, 77 L.Ed.2d 798 (1983) (breach of contract and misrepresentation actions by replacement workers); *Farmer v. United Brotherhood of Carpenters and Joiners of America, Local 25*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977) (infliction of emotional distress); *Linn v. United Plant Guard Workers of America, Local 114*, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966) (libel).

That chapter 151B touches interests deeply rooted in local feeling and responsibility is not disputed. Rather, the majority asserts that Doulamis' claim is not really a sex discrimination claim, describing Doulamis' claim as the product of "artful[ ] pleading." With deference, I believe the record establishes that Doulamis' claim is clearly one for sex discrimination and has been treated as such by the MCAD.[7]

On the facts as alleged, Doulamis has stated a claim before the MCAD for sex discrimination under chapter 151B. She asserts, *inter alia:*

> On November 10, 1993, I was harassed about my union activity. I believe the reason is because I am a female. The males who are also involved are not being harassed. Therefore, I charge Respondent with unlawful discrimination against

me, in violation of M.G.L. Chapter 151B ... and Title VII....

> I believe that I am being single[d] out by the Respondent because I am a female. There are numerous other male union organizers who are not being harassed.

That Doulamis asserts a bona fide sex discrimination claim is buttressed by the underlying papers in the pleadings submitted by Chaulk to the district court. Doulamis was apparently a well-respected employee and was featured in Chaulk's publicity materials. From the time she began working at Chaulk in 1990 until the autumn of 1993, Doulamis received no written warnings and no patient complaints. In the middle of 1993, the International Association of EMTs and Paramedics began a union organizing campaign at Chaulk. Although not initially involved, Doulamis became involved in the campaign during the fall of 1993, when she and Eric Burgess, a male Chaulk employee, wrote a letter to the president of Chaulk's parent company calling for organization of a union. On November 10, 1993, Doulamis was called from a training session to meet with the CEO of Chaulk, Nicholas O'Neil, and a vice president, Joseph Gilmore. The two men told Doulamis at that meeting that she was "pretty" and that they believed that the other employees at Chaulk would listen to her because she was "pretty." They asked her to become a non-union advocate, saying that her physical appearance would persuade other employees to vote against the union. She refused. Shortly thereafter, Doulamis began receiving a series of harassing warnings from Chaulk management about her conduct on the job and her union activities. Burgess, who had co-authored the pro-union letter with Doulamis, did not receive such harassment.

Doulamis believed that she was being singled out for punishment for her union activities *because of her sex*. The heart of her complaint before the MCAD was that she was being harassed for her union activities

---

7. Doulamis' claim cannot be preempted simply because the case arises from a labor dispute. The Supreme Court has squarely held that *Garmon* preemption does not turn on whether a claim arises in the context of a labor dispute.

*Linn*, 383 U.S. at 63, 86 S.Ct. at 663 ("Nor should the fact that defamation arises during a labor dispute give the Board exclusive jurisdiction to remedy its consequences.").

while male union organizers—including one who had co-authored the letter precipitating the harassment—were not (or at least were not until after Doulamis filed her complaint with the MCAD). This allegation states a prima facie claim of sex discrimination under chapter 151B. *See Ramsdell v. Western Massachusetts Bus Lines, Inc.,* 415 Mass. 673, 679, 615 N.E.2d 192 (1993); *see also Blare v. Husky Injection Molding Sys. Boston, Inc.,* 419 Mass. 437, 646 N.E.2d 111 (1995).

Under the facts of this case Doulamis could allege two distinct wrongs—a claim for unfair labor practices and a claim for sex discrimination. Characterizing Doulamis' latter claim as artful pleading assumes away the difficult legal question raised by Doulamis' case and squarely presented in the briefs: whether a sex discrimination claim based on state law is preempted if it arises out of a course of events that also may give rise to an unfair labor practice charge.

The Supreme Court in *Sears, Roebuck & Co. v. San Diego County District Council of Carpenters,* 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978), held that even if a case may come within the scope of the *Garmon* preemption doctrine when applied in a "me-chanical fashion," *id.* at 188, 98 S.Ct. at 1752–53, there is still no preemption over conduct arguably prohibited by the NLRA unless the controversy before the state court is *identical* to the dispute that could have been presented under the NLRB. *Id.* at 197, 98 S.Ct. at 1757–58.[8] Doulamis' MCAD claim is not identical to that which could have been heard by the NLRB.

To make out her claim on her chapter 151B action Doulamis needs to show (1) a prima facie case of discrimination and (2) "either that the employer's articulated reasons are a pretext or by direct evidence that the actual motivation was discrimination." *Blare,* 419 Mass. at 444, 646 N.E.2d 111. The action before the NLRB could not have turned on such an inquiry. Further, the terms of the employer's settlement agreement with the NLRB do not establish that Doulamis' claim before the MCAD is not a bona fide sex discrimination claim.[9]

On the alleged facts of this case—where Doulamis and Burgess were engaged in the same activity (co-authoring the letter)—the MCAD will not have to decide as a matter of law whether one of the two was engaged in union activity, while the other was not. In other words, insofar as Doulamis and Bur-

---

**8.** At issue in *Sears* was conduct that could be analyzed in two distinct ways. The conduct was both "arguably protected" and "arguably prohibited" by the NLRA. The Court drew a distinction between those two categories of conduct (although in that case, the same conduct happened to qualify as both) and imposed two distinct lines of analysis. If the activity at issue is "arguably protected," a finding of preemption is required where an aggrieved party has a reasonable opportunity of invoking the NLRB jurisdiction or of inducing his adversary to do so. *Id.* at 207, 98 S.Ct. at 1762–63. If an activity is "arguably prohibited," state jurisdiction is preempted only if the issues presented to the state court are identical to those that could be presented to the NLRB. The latter rubric leaves much more room for state regulation. *Id.* at 200, 98 S.Ct. at 1759. Since sex discrimination is clearly not protected by the NLRA, the conduct at issue in this case falls under the more generous "arguably prohibited" rubric.

The majority appears to apply to this case criteria that *Sears* made applicable to "arguably protected" conduct. For example, in determining that the controversy here is identical to that which could have been put to the NLRB the majority says, "[p]lainly this is not a case where the NLRB declined to exercise its lawful jurisdiction over a labor controversy, or where the NLRB's actual exercise of jurisdiction remains a matter of speculation." Majority Op. at 1366; *see also* Majority Op. at 1366 n. 4. While this consideration is important to cases involving "arguably protected" conduct, it is not to "arguably prohibited" conduct.

**9.** There also seems to be an absence of record support for either the proposition that the sex discrimination action was addressed before the NLRB or the proposition that the settlement is "comprehensive." The settlement agreement, dated March 22, 1995, does not refer to alleged sex discrimination. Also, according to its terms, the agreement applies "only [to] the allegations in the above captioned cases and does not constitute a settlement of any other cases or matters." The "above captioned cases" are docket numbers "1–CA–31196, 31945(2), 32267, 32378, 32504, 32534, 32645, 32661." Only one of those docket numbers, 1–CA–31196, filed December 9, 1993, involves Doulamis. Apparently not included in the settlement are the other two claims that were, according to Chaulk, made by Doulamis: docket numbers 1–CA–31157, filed November 29, 1993, and 1–CA–31181–2, filed December 6, 1993.

gess were doing the same thing (yet only one was harassed), the question of whether the activities were protected union activities cancels out of the equation.

This is why the MCAD, when presented with Chaulk's claim of preemption, said:

In the Complainant's presentation of her discrimination case before this Commission, the 'merits' of the underlying labor dispute need not be resolved. It is not necessary for this Commission to find that the Respondent did, in fact, interfere with the Complainant's efforts to organize union activities; nor is it necessary for a determination to be made regarding the Respondent's anti-union animus, if one should exist. Rather, the Complainant must show that she was treated dissimilarly by the Respondent, and that the impetus for that dissimilar treatment was due to her gender. It is neither the role nor the goal of this Commission to assess the catalyst of the Respondent's actions. It is, however, this Commission's purpose to ensure that such actions are not gender motivated.

In the present case, the Commission may decide the issue in dispute without making a threshold determination of whether the employer had interfered with the employee's union activities. It need only determine whether the treatment the Complainant received, rightly or wrongly, was different from that of her male counterparts and motivated by her gender.

It is in this context that the MCAD's interrogatory must be understood. While it is true that the MCAD has asked Chaulk questions relating to union organizing activities (and has perhaps shown insufficient sensitivity to the possible jurisdictional problem), it has done so for the purpose of determining factually whether Doulamis was treated differently than men for doing the same thing,

and not to define legally what is or is not a union activity under the NLRA. As the MCAD has recognized, Doulamis' sex discrimination claim exists independently of any labor law claim. Chaulk's conduct was not wrongful only by virtue of, or with reference to, the labor laws. Cf. Tamburello v. Comm–Tract Corporation, 67 F.3d 973, 979 (1st Cir.1995) (RICO claim preempted under Garmon where reviewing court would be forced to decide whether some portion of defendant's conduct violated federal labor laws to determine whether the plaintiff had established a RICO predicate act).[10]

The Sears inquiry suggests that the MCAD claim does not fall within the scope of Garmon preemption. There is, however, an even more compelling consideration that yields the same conclusion. Of paramount importance in any preemption inquiry, including one under Garmon, is congressional intent. See Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 747, 105 S.Ct. 2380, 2393, 85 L.Ed.2d 728 (1985) (stating, in discussing NLRA preemption, including Garmon preemption, that "as in any preemption analysis, [t]he purpose of Congress is the ultimate touchstone") (internal quotations omitted). If Congress has clearly evidenced its intent one way or the other on the question of whether states may regulate an area of conduct, federal courts must follow it. Congress has clearly evidenced its belief that state anti-discrimination statutes do not unduly interfere with federal labor policy.

Doulamis' claims not only come under chapter 151B but also come within the scope of Title VII, 42 U.S.C.A. § 2000e to e–17 (West 1994 & Supp.1995), and are within the jurisdiction of the Equal Employment Opportunity Commission ("EEOC"). She has in fact alleged a violation of Title VII and has indicated in her MCAD complaint that she

10. Significantly, particularly with respect to the *Younger* issues raised in Part II, any issue concerning whether Doulamis was or was not engaged in union activity will arise in this case, if at all, by way of Chaulk's potential defense to the action—that Doulamis was treated differently than Burgess and other male organizers because the male organizers were engaged in protected union activity, while Doulamis was not. The Supreme Court has said in the analogous context of § 301 preemption under the Labor Manage-ment Relations Act that a defense of preemption is not even a sufficient basis for removal of the action to federal court. *See Caterpillar Inc. v. Williams,* 482 U.S. 386, 399, 107 S.Ct. 2425, 2433, 96 L.Ed.2d 318 (1987) ("'[A] *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated.") (emphasis in original).

wishes to have her charges filed with the EEOC.

The Supreme Court has said that the NLRA and Title VII provide concurrent remedies. *See Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47–48, 94 S.Ct. 1011, 1019–20, 39 L.Ed.2d 147 (1974); *see also Beverly v. Lone Star Lead Construction Corp.*, 437 F.2d 1136, 1140 n. 22 (5th Cir. 1971); *cf. Britt v. Grocers Supply Co., Inc.*, 978 F.2d 1441, 1447 (5th Cir.1992) ("[W]e have held that claims under Title VII are not preempted by the NLRA. [Our] cases hold that a remedy is available under both the NLRA and Title VII and recognize concurrent jurisdiction between Title VII and the NLRA." (footnote omitted)), *cert. denied,* ── U.S. ──, 113 S.Ct. 2929, 124 L.Ed.2d 679 (1993); *Morgan v. Massachusetts General Hosp.*, 901 F.2d 186, 194 (1st Cir.1990) ("Clearly, if an employee has engaged in expression against employer policies, even within the context of union activities, which violate the Civil Rights Act, such as discriminatory treatment of minorities or sexual harassment, and the employee alleges discharge for that expression, section 704(a) [of the Civil Rights Act] would be implicated for the narrow expression-related claims.").[11]

Thus, even accepting the majority's view that the factual basis for the sex discrimination claim provides the same basis for the unfair employment practice claim and that the sex discrimination claim is identical to that before the NLRB, Doulamis is still entitled to pursue her claim under Title VII before the EEOC. *See Alexander*, 415 U.S. at 47–48, 94 S.Ct. at 1019–20. Since the conduct prohibited by Title VII is nearly the same as that proscribed by chapter 151B and Congress intended Title VII to provide a concurrent remedy to the NLRA in areas of overlap, it would be difficult to impute to Congress any hostility to the enforcement of

chapter 151B with respect to areas of potential overlap with the NLRA.

There is, however, no need to rely on such a general proposition in this case because Congress has affirmatively stated in the language and through the structure of Title VII itself that state anti-discrimination laws may provide a remedy that overlaps with the NLRA. Not only did Congress affirmatively preserve the operation of state anti-discrimination laws in Title VII, *see* 42 U.S.C.A. § 2000e–7, but it made the state anti-discrimination statutes an integral component of the Title VII enforcement structure. *See* 42 U.S.C.A. § 2000e–5(c) ("section 706(c)"). Section 706(c) of Title VII explicitly provides that in states like Massachusetts (which have anti-discrimination statutes and an agency charged with enforcing the state statute) jurisdiction in the state administrative agency is *exclusive* for the first 60 days after a claim is filed. *See* 42 U.S.C.A. § 2000e–5(c).

The importance of state anti-discrimination statutes in the enforcement scheme of Title VII was of major concern to Congress in enacting Title VII. *Isaac v. Harvard University*, 769 F.2d 817, 822 (1st Cir.1985) ("The issue reflected in section 706(c), the relationship between federal and state remedies for employment discrimination, received much attention throughout the legislative process."). The legislative history shows that section 706(c) of Title VII was enacted "'to keep primary, exclusive jurisdiction in the hands of the State commissions for a sufficient period of time to let them work out their own problems at the local level.'" *Id.* (quoting 110 Cong.Rec. 13087 (1964) (comments of Senator Dirksen)).[12] It was critical to the passage of Title VII that the federal government initially defer to the states in matters involving discrimination. Moreover, Congress did not devise this enforcement

**11.** It is clear also that jurisdiction is concurrent between the EEOC and NLRB over claims that may fall within each statute. *See Beverly*, 437 F.2d at 1140, n. 22.

**12.** The EEOC has recognized the importance of allowing state anti-discrimination statutes to operate in order to effectuate Congress' purposes for Title VII. *See, e.g.*, 29 C.F.R. § 1601.13(a)(3)(i) (1995) ("In order to give full

weight to the policy of section 706(c) of title VII, which affords State and local fair employment practice ["FEP"] agencies that come within the provisions of that section an opportunity to remedy alleged discrimination concurrently regulated by title VII or the ADA and State or local law, the Commission adopts the following procedures with respect to allegations of discrimination filed with the Commission.").

structure simply for administrative convenience (i.e., to avoid duplication of effort). As this court has previously said, section 706(c) "was first, and foremost, a statute of deference." *Isaac,* 769 F.2d at 824; *see also id.* at 824 n. 9 (citing *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979) and stating that "[t]he Court's implicit message appears to be that deference, and not duplication, was at the heart of section 706(c)").[13] And Congress clearly had the NLRA in mind when it mandated this principle of deference to the state anti-discrimination statutes. *See Alexander,* 415 U.S. at 48 n. 9, 94 S.Ct. at 1019 n. 9 (quoting 110 Cong.Rec. 7207 (1964) (where Senator Joseph Clark, one of the sponsors of the bill, introduced an interpretive memorandum specifically mentioning the relationship between Title VII and the NLRA)).

If Congress believed that state anti-discrimination statutes could not regulate coextensively with Title VII, then perhaps preemption would be appropriate. But that is not the case. Nothing in Title VII says that state anti-discrimination statutes cannot apply coextensively with Title VII. More significantly, there clearly is nothing that says that the exclusive jurisdiction of state administrative agencies under section 706(c) is limited to cases under Title VII that do not overlap with the NLRA.

It is possible to draw at least two conclusions relevant to congressional intent from Title VII. First, Congress affirmatively intended that state anti-discrimination statutes would operate to regulate conduct covered by Title VII to the same extent as Title VII itself and, thus, in areas that might also be covered by the NLRA. Second, Congress could not have intended to eliminate the operation of state anti-discrimination statutes over claims covered by Title VII because that would actively *impair* the operation of Title VII and frustrate the enforcement scheme

Congress envisioned. Not even ERISA preemption, which is arguably much broader than *Garmon* preemption, *see Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 747, 105 S.Ct. 2380, 2393, 85 L.Ed.2d 728 (1985) (distinguishing ERISA preemption from NLRA preemption by stating that ERISA preemption is statutorily mandated), allows preemption where it would impair the operation of Title VII. *See Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 102, 103 S.Ct. 2890, 2902–03, 77 L.Ed.2d 490 (1983) (where ERISA preemption of a state anti-discrimination statute would impair the operation of Title VII, there is no preemption). The reasonable conclusion is that Congress intended to allow state anti-discrimination statutes to overlap with the NLRA.

The Supreme Court's decision in *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), reinforces this conclusion. In *Alexander* the Court was called upon to determine the relationship between the federal courts and the grievance-arbitration machinery of collective bargaining agreements in the resolution and enforcement of an individual's rights under Title VII. There an employee had a claim for discrimination that was clearly covered by a collective bargaining agreement.[14] At issue was whether the employee's remedies provided in the collective bargaining agreement (and subject to arbitration) precluded a suit in federal court based on Title VII.[15] The Court unanimously held that it did not, saying:

> [L]egislative enactments in this area have long evinced a general intent to accord parallel or overlapping remedies against discrimination. In the Civil Rights Act of 1964, 42 U.S.C. § 2000a *et seq.,* Congress indicated that it considered the policy against discrimination to be of the "highest priority." *Newman v. Piggie Park Enter-*

---

**13.** Under the EEOC's regulations the MCAD is not only a designated FEP agency, *see* 29 C.F.R. § 1601.74 (1995), but it is a *certified* designated FEP agency, *see* § 1601.80 (1995), to which the EEOC gives a higher level of deference than it otherwise does to designated FEPs. *See* 29 C.F.R. § 1601.75(a) (1995).

**14.** The right to bargain collectively is, of course, an NLRA conferred right. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 213 n. 8, 105 S.Ct. 1904, 1912 n. 8, 85 L.Ed.2d 206 (1985).

**15.** In *Alexander,* as here, there had been no waiver of statutory rights. *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 35, 111 S.Ct. 1647, 1656–57, 114 L.Ed.2d 26 (1991).

*prises,* [390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968) ]. Consistent with this view, Title VII provides for consideration of employment-discrimination claims in several forums. *See* 42 U.S.C. § 2000e–5(b) (1970 ed., Supp. II) (EEOC); 42 U.S.C. § 2000e–5(c) (1970 ed., Supp. II) (*state and local agencies*); 42 U.S.C. § 2000e–5(f) (1970 ed., Supp. II) (federal courts). And, in general, submission of a claim to one forum does not preclude a later submission to another. Moreover, the legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and *other applicable state and federal statutes.*

*Alexander,* 415 U.S. at 47–48, 94 S.Ct. at 1019–20 (emphasis supplied; footnotes omitted);[16] *see also Brown v. Hotel and Restaurant Employees and Bartenders Intern. Union, Local 54,* 468 U.S. 491, 104 S.Ct. 3179, 82 L.Ed.2d 373 (1984).[17]

National labor relations policy does not begin and end with the NLRA. Title VII is as much a part of the network of labor relations law as is the NLRA. Where Congress has so clearly indicated that state anti-discrimination laws are to operate hand in hand with Title VII (indeed, for a limited period to the exclusion of Title VII) it is difficult to conclude Congress intended preemption under the circumstances here. In the words of *Garmon,* preemption should not be found absent "compelling congressional direction." *Garmon,* 359 U.S. at 244, 79 S.Ct. at 779. Here, all the congressional direction is to the effect that state antidiscrimination statutes may supplement federal laws, including federal labor laws, and *Garmon* preemption is therefore inappropriate.

## II.

Having stated my disagreement with the view that Doulamis' sex discrimination claim is preempted by the NLRA, I consider what perhaps may be a conceptually prior issue, the issue of abstention. By seeking an injunction against the state proceedings, Chaulk has effectively asked the federal court to enjoin the state courts from deciding the *Garmon* issue. Thus, the potentially dispositive question, apart from whether *Garmon* preemption is appropriate, is whether this federal court should bar the state fair employment agency from hearing this claim

---

**16.** The Court has applied a similar analysis in analogous situations. *See Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 412, 108 S.Ct. 1877, 1884–85, 100 L.Ed.2d 410 (1988) (suggesting that "§ 301 does not preempt state anti-discrimination laws, even though a suit under these laws, like a suit alleging retaliatory discharge, requires a state court to determine whether just cause existed to justify the discharge." (citation omitted)); *Colorado Anti–Discrimination Commission v. Continental Air Lines, Inc.,* 372 U.S. 714, 724, 83 S.Ct. 1022, 1027, 10 L.Ed.2d 84 (1963) (rejecting a claim that a state anti-discrimination law was preempted by the Railway Labor Act, which is similar to the National Labor Relations Act).

**17.** At issue in *Brown* was whether §§ 86 and 93 of the New Jersey Casino Control Act (which set qualifications for union officials) were preempted by § 7 of the NLRA. It was argued that the New Jersey statute was preempted because it interfered with the right protected under § 7 of employees to choose their union officials. The Supreme Court held that § 7 did not completely preempt §§ 86 and 93 of the New Jersey statute. In the Court's view, Congress had, through the passage of the Labor–Management Reporting and Disclosure Act ("LMRDA"), disclaimed any intent to pre-empt all state regulation which touched upon the specific right of employees to decide which individuals will serve as officials of their bargaining representatives. The LMRDA had imposed, in § 504(a), federal qualification standards for union representatives. Because the LMRDA affirmatively preserved the operation of state laws in § 603 and made § 504(a) itself dependent in part on state laws for its enforcement, the Court held that state laws could impose their own similar qualification standards on union officials. *Id.* at 509, 104 S.Ct. at 3189.

*Brown* is highly instructive on the type of approach required for this case. In *Brown,* the Court focussed on the indicia of congressional intent that could be found not just in the NLRA, but also in a parallel federal statute. The parallel federal statute there specifically reserved a place for state regulation over the conduct coming within its scope. While the LMRDA does not bear on this case, Title VII does, and Title VII makes clear that Congress intended federal and state regulation of discrimination to overlap. The differences between *Brown* and this case do not affect the central instruction of *Brown:* that a federal court must defer to congressional intent in making any preemption analysis, even one involving the NLRA and even if it is expressed in another federal statute.

and so bar Massachusetts state courts from deciding the *Garmon* issue themselves, or, to the contrary, abstain from decision and allow the state agency and courts to proceed. As with the preemption issue, this issue is difficult, but on balance I would hold here under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny, that abstention is appropriate.

*Younger* prevents interference with pending state administrative proceedings if they are of a judicial nature, implicate an important state interest, and provide the federal plaintiff an adequate opportunity to litigate his constitutional claim. *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 627, 106 S.Ct. 2718, 2722–23, 91 L.Ed.2d 512 (1985). Although Chaulk claims that *Younger* abstention is a principle of "discretionary deference," the Supreme Court has stated that where a case falls within the *Younger* parameters, a district court has no discretion to provide injunctive relief and must abstain. *See Colorado River Water Conservation District v. United States,* 424 U.S. 800, 816 n. 22, 96 S.Ct. 1236, 1246 n. 22, 47 L.Ed.2d 483 (1976) ("Where a case is properly within [the *Younger* ] category of cases, there is no discretion to grant injunctive relief."); *see also Sun Refining & Marketing Co. v. Brennan,* 921 F.2d 635, 639 (6th Cir.1990) ("[U]nlike other forms of abstention, when a case is properly within the *Younger* category of cases, there is no discretion on the part of the federal court to grant injunctive relief."); *Seneca–Cayuga Tribe v. State ex rel. Thompson,* 874 F.2d 709, 711 (10th Cir.1989) (*Younger* abstention not discretionary once conditions are met, absent extraordinary circumstances that render a state court unable to give litigants a full and fair hearing on their federal claims).[18]

There is no question that the MCAD proceedings were ongoing at the time Chaulk's district court complaint was filed, *see Bettencourt v. Board of Registration in Medicine,* 904 F.2d 772, 777 (1st Cir.1990) (in determining interference "the proper point of reference is the date plaintiff filed his federal complaint"), and that the proceedings are judicial in nature. *See Dayton Christian Schools,* 477 U.S. at 629, 106 S.Ct. at 2723–24 (finding Ohio Civil Rights Commission proceedings sufficiently judicial in nature). The significant questions here are whether the state interest in deciding sex discrimination claims is important and whether there will be an adequate opportunity for Chaulk to raise the *Garmon* preemption question in the Massachusetts state forum.

The Supreme Court has said that remedying sex discrimination is a sufficiently important state interest to trigger *Younger. See Dayton Christian Schools,* 477 U.S. at 628, 106 S.Ct. at 2723 ("We have no doubt that the elimination of prohibited sex discrimination is a sufficiently important state interest to bring the present case within the ambit of [*Younger* and its progeny].") Although Chaulk has suggested that there can be no significant state interest in this case because it is preempted, such an argument, I believe, is most likely foreclosed by *New Orleans Public Service, Inc. v. Council of City of New Orleans,* 491 U.S. 350, 365, 109 S.Ct. 2506, 2516–17, 105 L.Ed.2d 298 (1989) (*"NOPSI"*). In *NOPSI* the Court said that in determining the importance of the state interest courts should "not look narrowly to its interest in the outcome of the particular case—which could arguably be offset by a substantial federal interest in the opposite outcome." *Id.* Courts rather must look to the "importance of the generic proceedings to the State." *Id.* (citing *Dayton Christian Schools* ). As *Dayton Christian Schools* made explicit, Massachusetts has a legitimate and important state interest in preventing sex discrimination. Thus the important state interest prong of *Younger* is satisfied in this case.

Where there is an important state interest, the Supreme Court has noted that a federal court should abstain unless state law clearly bars the interposition of the federal plaintiff's constitutional claim. *Middlesex County Ethics Committee v. Garden State Bar Ass'n,*

---

**18.** The majority quarrels with this proposition stating that the *Colorado River* case was discussing criminal cases. *Colorado River,* however, was discussing *Younger* abstention and *Younger* clearly applies to non-criminal state administrative proceedings. *See Dayton Christian Schools,* 477 U.S. at 627 & n. 2, 106 S.Ct. at 2723 & n. 2.

457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982). Here, we have no reason to doubt that the Massachusetts state courts will provide Chaulk with a full and fair opportunity to raise the *Garmon* preemption question. Chaulk raised the preemption argument before the MCAD and will have a further opportunity to pursue it before the Massachusetts appellate courts. *Dayton Christian Schools*, 477 U.S. at 629, 106 S.Ct. at 2723–24 ("[I]t is sufficient ... that constitutional claims may be raised in state-court judicial review of the administrative proceeding.") (citation omitted).

If federal law barred the Massachusetts state courts from deciding the *Garmon* preemption question, then the "adequate opportunity" prong would not be met. Indeed such a proposition appears to be at the heart of Chaulk's argument. Chaulk argues: "[W]here conduct is arguably protected or prohibited by the NLRA, jurisdiction over that conduct is preempted in the labor context and is exclusively federal. *The determination of whether the case arguably falls within the preempted field is also to be made by the federal courts, not State courts or State tribunals*" (emphasis supplied).

But that proposition is untenable and inconsistent with the Supreme Court's case law. Although state courts may be deprived of jurisdiction to decide a case *once* it is preempted under *Garmon*, they are not deprived of jurisdiction to decide *whether* a case is so preempted. State courts have concurrent jurisdiction to decide federal preemption issues. *See Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 149–50, 108 S.Ct. 1684, 1691–92, 100 L.Ed.2d 127 (1988) ("[W]hen a state proceeding presents a federal issue, even a pre-emption issue, the proper course is to seek resolution of that issue by the state court."); *see also Turnbow v. Pacific Mut. Life Ins. Co.*, 934 F.2d 1100, 1103 (9th Cir.1991) (no jurisdictional bar to state court deciding ERISA preemption question); *Sun Refining & Marketing Co. v. Brennan*, 921 F.2d 635, 641 (6th Cir.1990) (discussing possibility of *Younger* abstention question in situation involving state action that was arguably subject to the exclusive jurisdiction of Occupational Safety and Health Administration ("OSHA") and stating, "it is undisputed that concurrent jurisdiction exists in the Ohio state courts to decide the federal pre-emption issue").

*Garmon* preemption is no exception to this principle. *Cf. International Longshoremen's Ass'n, AFL–CIO v. Davis*, 476 U.S. 380, 393, 106 S.Ct. 1904, 1914, 90 L.Ed.2d 389 (1985) ("when a claim of *Garmon* preemption is raised [in state court], *it must be considered and resolved by the state court*" (emphasis supplied)). Because the Massachusetts state courts have concurrent jurisdiction to decide the *Garmon* preemption issue, Chaulk will have an adequate opportunity to raise its *Garmon* preemption claim in the Massachusetts courts, and thus the "adequate opportunity" prong of *Younger* is also met here.

Perhaps recognizing that *Younger* applies to this case, Chaulk has argued that preemption cases should be treated differently than typical *Younger* abstention cases. It says that "[t]he real issue in this case is whether a doctrine of comity should be applied in a *Garmon* preemption case." It argues that treating this case under *Younger* "confuses two federal concepts which are rooted in very different soil"; and that while *Younger* "is predicated upon discretionary deference by the federal government to fundamental State interests," preemption "is mandatory and arises under the Constitution, specifically, the Supremacy Clause." According to Chaulk "[t]o elevate the equitable doctrine of abstention over the Constitutional doctrine of preemption would truly be to elevate form over substance."

Whatever the merits of Chaulk's argument in theory, the Supreme Court has apparently rejected it. In *NOPSI* the Court said that preemption issues do not involve a greater federal interest than other constitutional challenges:

There is no greater federal interest in enforcing the supremacy of federal statutes than in enforcing the supremacy of explicit constitutional guarantees, and constitutional challenges to state action, no less than pre-emption-based challenges, call into question the legitimacy of the State's interest in its proceedings reviewing or enforcing that action. Yet it is clear that the mere assertion of a substantial

constitutional challenge to state action will not alone compel the exercise of federal jurisdiction.... [P]reemption-based challenges merit a similar focus....

*Id.* 491 U.S. at 365, 109 S.Ct. at 2516. Thus, courts are to analyze *Younger* abstention cases involving preemption claims no differently than any other *Younger* abstention case, *see Sun Refining,* 921 F.2d at 639, and even a substantial claim of federal preemption is not sufficient to overcome *Younger.* *See NOPSI,* 491 U.S. at 365–66, 109 S.Ct. at 2516–17.[19]

The exception to *Younger* that provides that abstention may be improper where the plaintiff might suffer irreparable injury absent equitable relief is not applicable here. A sufficient risk of irreparable injury may exist where the challenged state statute is "flagrantly and patently violative of express constitutional prohibitions...." *Younger,* 401 U.S. at 53–54, 91 S.Ct. at 754–55. But chapter 151B is hardly flagrantly unconstitutional and, given the complexities of the preemption question, it is difficult to describe the MCAD's actions as flagrantly or patently violative of the *Garmon* preemption principle.

Further, although the Supreme Court in *NOPSI* left open the question of whether a "facially conclusive" claim for preemption might fall within the exception to *Younger,*

*see NOPSI,* 491 U.S. at 367, 109 S.Ct. at 2717–18, the preemption claim here is not facially conclusive. For Chaulk's preemption claim to be facially conclusive the federal courts must be able to determine the state action is preempted "without further factual inquiry." *Id.* Chaulk cannot meet this standard.

The MCAD has not sought directly to regulate unfair labor practices nor has it questioned the authority of the NLRB to adjudicate the unfair labor practices claim. *Cf. NOPSI,* 491 U.S. at 367, 109 S.Ct. at 2717–18. It has in fact said that "the issue of union interference is properly left to the provinces of the NLRB." Neither has it challenged the non-admission settlement agreement that Chaulk has entered, nor does it appear that the MCAD action will undermine that agreement.[20] Even if there were reason to doubt whether Doulamis has a bona fide claim for sex discrimination or whether the MCAD should adjudicate the dispute, it would be impossible "conclusively [to] say [the MCAD] is wrong without further factual inquiry—and what requires further factual inquiry can hardly be deemed 'flagrantly' unlawful for purposes of a threshold abstention determination." *NOPSI,* 491 U.S. at 367, 109 S.Ct. at 2518.[21]

Finally, the fact that the union filed a complaint with the NLRB before Doulamis

---

19. A distinction exists between preemption involving a choice of forum and preemption involving a choice of law. *Cf. Violette v. Smith & Nephew Dyonics, Inc.,* 62 F.3d 8, 11 (1st Cir. 1995) (choice of forum preemption is jurisdictional and cannot be waived, while choice of law is not and may be waived). The argument might be made that because *Garmon* involves choice of forum preemption there is a greater federal interest to protect than in a case involving choice of law and that, accordingly, abstention here might not be appropriate here even if abstention for choice of law preemption would be. *NOPSI,* however, says that the federal interest is not to be weighed against the state interest. *See Sun Refining,* 921 F.2d at 641. Thus even if the federal interest in *Garmon* preemption is weightier than in choice of law preemption cases, that consideration does not affect the *Younger* inquiry; abstention is appropriate as long as an important state interest is identified and the other requirements are met. *See Middlesex County,* 457 U.S. at 431–32, 102 S.Ct. at 2520–21; *Sun Refining,* 921 F.2d at 641.

20. There is nothing in the record to show that the NLRB even considered Doulamis' claims for sex discrimination in the context of the unfair labor practice charges. Moreover, the settlement agreement itself "does not preclude persons from filing charges, the General Counsel from prosecuting complaints, or the Board and *the courts* from finding violations with respect to matters which precede the date of the approval of this Agreement regardless of whether such matters are known to the General Counsel or are readily discoverable" (emphasis supplied).

21. There may be situations in which the preemption claim could be facially conclusive and abstention would not be appropriate. For example, this case would be viewed quite differently had Doulamis alleged before the MCAD that the discrimination Chaulk engaged in was simply based on her potential affiliation in the union, as opposed to her gender. In such a case, the question whether the claim was within the exclusive jurisdiction of the NLRA would not turn on deciding whether her claim was a case of artful

filed her complaint before the MCAD does not resolve the matter.[22] To begin with, Chaulk never raised such a theory as a basis to prevent abstention. Its initial brief, its reply brief, and the supplemental letter memorandum requested by the panel at oral argument are devoid of any argument that abstention is inappropriate because the NLRB proceeding was pending at the time of the MCAD complaint. It is therefore waived. *See Grella v. Salem Five Cent Savings Bank,* 42 F.3d 26, 36 (1st Cir.1994).

Moreover, there does not appear to be case law squarely supporting such a theory. Indeed, such a theory of abstention appears to be at odds with the treatment of the issue in at least one other circuit. *See Sun Refining,* 921 F.2d at 639–42 (abstention was appropriate despite claim that the state law action violated the exclusive jurisdiction of OSHA and despite fact that OSHA action had been pending and concluded months before the state action was brought). As a matter of policy, the existence of a NLRB action at the time a parallel state proceeding is filed should not control the matter here. The NLRB, if it so chose, could have sought an injunction against the state proceedings if it thought the state proceedings conflicted with its exclusive jurisdiction. *NLRB v. Nash–Finch Co.,* 404 U.S. 138, 142–44, 92 S.Ct. 373, 376–77, 30 L.Ed.2d 328 (1971).[23] The fact that the NLRB did not so move speaks volumes.

I respectfully dissent.

pleading. No more facts would need be determined and under such circumstances abstention would probably not be appropriate. Moreover, were the MCAD to assert jurisdiction under such circumstances, there would be a good argument that the MCAD was behaving in flagrant disregard of the *Garmon* preemption principle.

**22.** Although Doulamis' complaint before the MCAD was filed on December 1, 1993 the proceedings before the MCAD began on November 23, 1993 when Doulamis underwent her intake interview.

**23.** Even the cases cited for the proposition that a federal court may enjoin a state court's intrusion into a federal agency's exclusive jurisdiction do not stand for such a broad proposition. In the only labor case cited, *American Federation of Labor v. Watson,* 327 U.S. 582, 66 S.Ct. 761, 90 L.Ed. 873 (1946), the court specifically said that for such an injunction to issue there must be an immediate threat of irreparable injury, such as an "imminent threat to an entire system of collective bargaining." *Id.* at 595, 66 S.Ct. at 767. No comparable threat exists here. In fact, in *Watson* the Court explicitly said that the threat of multiple prosecutions under the state law would *not* be sufficient to justify an injunction. *See id.* The Court also *abstained* under the doctrine of *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). *See id.* at 599, 61 S.Ct. at 776.