**John W. PLATT, Plaintiff–Appellant,**

v.

**JACK COOPER TRANSPORT, CO., INC., Defendant–Appellee.**

Nos. 90–2917, 91–2038.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1991.

Decided March 16, 1992.

Gwen G. Caranchini, Kansas City, Mo., argued, for plaintiff-appellant.

R. Kent Sellers, Kansas City, Mo., argued (Loyd E. Owen, Jr. and Bernard J. Rhodes, on brief), for defendant-appellee.

Before BOWMAN, Circuit Judge, ROSS, Senior Circuit Judge, and LOKEN, Circuit Judge.

LOKEN, Circuit Judge.

John W. Platt appeals the district court[1] decision dismissing his state law wrongful discharge suit against Jack Cooper Transport Co., Inc. Before filing this lawsuit, Platt had unsuccessfully sought wrongful discharge relief by instituting a grievance under Cooper's collective bargaining agreement, and by filing unfair labor practice complaints with the National Labor Relations Board. We agree with the district court that Platt's state law claims are preempted by the federal labor laws. Accordingly, we affirm.

I.

Platt, a truck driver for Cooper, left Cooper's terminal in Santa Fe Springs, California, in September 1987 to deliver a load to Midlothian, Texas. According to Cooper,

---

1. The HONORABLE D. BROOK BARTLETT, United States District Court Judge for the Western District of Missouri.

Platt called in mid-route to report that he had been drinking, could not continue the trip, and needed rehabilitation. Cooper granted Platt a leave of absence on the condition he would complete an alcohol rehabilitation program. When Platt asked to return to work without completing rehabilitation, Cooper discharged him for failing to complete a job and failing to meet the conditions of his leave of absence.

Platt's union, Teamsters Local No. 63, instituted a grievance for him under its collective bargaining agreement with Cooper, claiming that Platt was not terminated for cause. At the grievance hearing, Platt explained that he developed an upper respiratory illness en route, attempted to treat it with alcohol, and then checked into a hospital. He denied any agreement with Cooper to take a leave of absence to undergo alcohol rehabilitation. He also claimed "undue harassment and intimidation by [Cooper] management during much of his employment." Nevertheless, in January 1988, the Automobile Transporters Southwest Local Committee upheld Platt's discharge under the collective bargaining agreement, finding that Platt had agreed to complete a rehabilitation program after he was unable to complete a trip and then failed to complete that program.

In March 1988, Platt filed a charge with the National Labor Relations Board accusing Cooper of firing him "because of his union and protected concerted activities." The NLRB Regional Director declined to issue a complaint because of insufficient evidence. The NLRB General Counsel denied Platt's appeal, explaining:

> [W]hile there was evidence that you had filed numerous grievances and had acted as a shop steward during your employment, there was insufficient evidence to establish a connection between those activities and your discharge. The evidence failed to establish Employer hostility based upon such activities.[2]

In July 1988, Platt commenced this action in the Western District of Missouri, where he has lived since his discharge. His amended complaint alleged that he is entitled to reinstatement, back pay, and punitive damages because Cooper violated California statutory and common law by discharging him in retaliation for his

> numerous complaints to Cooper, Inc., state and federal agencies regarding allegedly unsafe working conditions, including allegations regarding brakes, the roads and routes he and other drivers were expected to drive, long driving hours beyond those required by DOT Regulations, and unsafe loading procedures.

On October 11, 1990, the district court granted summary judgment dismissing Platt's retaliation claims as preempted by the National Labor Relations Act and the Labor Management Relations Act. The district court applied NLRA preemption because Platt's safety complaints were within or arguably within various provisions of the collective bargaining agreement. *See NLRB v. City Disposal Systems, Inc.*, 465 U.S. 822, 104 S.Ct. 1505, 79 L.Ed.2d 839 (1984). It applied LMRA preemption because the resolution of Platt's state law claims would require interpretation of the collective bargaining agreement. *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988).

Platt has appealed the district court's preemption rulings.[3] He has not appealed the dismissal of his additional claims for intentional infliction of emotional distress and breach of contract. Additionally, we have before us Platt's separate appeal from the district court's denial of his motion for Rule 11 sanctions, and Cooper's

---

**2.** In March 1989, Platt filed another charge with the NLRB alleging that Cooper discharged him "because of his activities on behalf of Teamsters Local 63." Once again, the Regional Director declined to issue a complaint. Platt also filed two charges alleging that Teamsters Local No. 63 had "failed and refused to fairly represent" him in the grievance process; the Regional Director declined to issue a complaint against the union.

**3.** He also urges us to restore his pendent claim for failing to return $900 of property left in his truck, an issue we need not reach since we affirm the dismissal of his other claims.

motion that Platt or his counsel be sanctioned for taking that allegedly frivolous appeal.

## II.

■ In *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 245, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959), the Supreme Court held that, "[w]hen an activity is arguably subject to § 7 or § 8 of the [NLRA, 29 U.S.C. §§ 157–158], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." Therefore, "as a general rule, neither state nor federal courts have jurisdiction over suits directly involving" such activity. *Vaca v. Sipes,* 386 U.S. 171, 179, 87 S.Ct. 903, 911, 17 L.Ed.2d 842 (1967).

Platt complained to the Board that Cooper fired him "because of his union and protected concerted activities." Union activities are protected by § 7 of the NLRA ("Employees shall have the right to ... join or assist labor organizations"). Discharging an employee for his union activities is prohibited by § 8.[4] Thus, the charges against Cooper that Platt filed with the NLRB would have been preempted under *Garmon* if filed in court under state law.

Unlike the charges he filed with the NLRB, Platt's claims in this lawsuit are framed in terms of state law, alleging that he was discharged for making safety complaints, rather than for "union and protected concerted activities." Are such safety complaints nonetheless arguably protected activity for *Garmon* preemption purposes? On the facts of this case, it would seem so, for the "union activities" Platt referred to in his NLRB charges surely referred at least in part to his prior safety complaints. Preemption turns on the nature of the conduct in question, not on the way it is pleaded.

But the question has an even more certain answer. In *City Disposal,* 465 U.S. at 841, 104 S.Ct. at 1516, the Supreme Court held that protected concerted activity under § 7 includes "an individual employee's reasonable and honest invocation of a right provided for in his collective-bargaining agreement." Here, the district court construed Cooper's collective bargaining agreement as specifically protecting Platt's right to make safety complaints.[5] Thus, Platt's claim that he was discharged in retaliation for making safety complaints satisfies the threshold test for *Garmon* preemption. *See generally, Meyers Ind., Inc.,* 268 N.L.R.B. 493, 123 L.R.R.M. 1137 (1986).[6]

*Garmon*'s broad preemption rule is subject to an exception when the arguably protected or prohibited activities "touch interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act." *Garmon,* 359 U.S. at 243–44, 79 S.Ct. at 778–79. Under this exception, the Supreme Court has de-

---

**4.** It is an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed" by § 7, § 8(a)(1); or "by discrimination in regard to hire or tenure of employment ... to encourage or discourage membership in any labor organization," § 8(a)(3).

**5.** Article 66 of the collective bargaining agreement obligated employees to immediately report equipment defects. Article 67 provided that employees would not violate the agreement by refusing to operate unsafe equipment "unless such refusal is unjustified." Article 30, § 2, citing federal safety standards, required that Cooper immediately abate any "imminent danger hazard," and required the union, employees, and Cooper "to file and process all grievances or

complaints involving alleged unsafe or unhealthful workplace conditions pursuant to the grievance procedures of the Agreement."

**6.** In *Meyers,* the NLRB held that there is no § 7 "concerted activity" when an employee makes a safety complaint based upon a statute, rather than a collective bargaining agreement, unless he acts with or on the authority of other employees. Because Platt's safety complaints were grounded in part upon his rights under the collective bargaining agreement, those complaints were "concerted activity" under *City Disposal.* Thus, we need not address the district court's alternative holding that Platt's safety complaints were "concerted activity" under the joint-employee-action principle in *Meyers.*

clined to preempt a variety of state law claims even though they arose in a labor law context. *See, e.g., Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters,* 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978) (trespass by peaceful picketing); *Farmer v. United Bhd. of Carpenters and Joiners,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977) (intentional infliction of emotional distress); *Linn v. Plant Guard Workers,* 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966) (defamation).

■ Platt has not argued that California's interest in protecting job-safety complainants justifies an exception to *Garmon* preemption under the *Sears, Roebuck* line of cases. We normally do not consider issues not raised by the parties. However, we have no doubt that California, like the federal government, has a strong interest in protecting workers who make job safety complaints, an interest reflected in Cal.Lab. Code § 1102.5, a "whistle-blower" statute, and in Cal.Lab.Code § 6310(b), which prohibits the discharge of employees who make safety complaints. *See Birtell v. Lockheed–California Co.,* 201 Cal.App.3d 293, 247 Cal.Rptr. 86 (Cal.Ct.App.1988). Therefore, whether state law claims based upon this local interest are preempted by the federal labor laws is an important question that we should not ignore. *See Prill v. NLRB,* 755 F.2d 941, 966–67 n. 11 (D.C.Cir.1985) (Bork, J., dissenting).

If the challenged conduct occurs in the context of a labor dispute, so that an unfair labor practice charge could have been filed, but the deeply rooted local interest in regulating that conduct is strong, the critical inquiry for *Garmon* preemption purposes is "whether the controversy presented to the state court is identical to ... that which could have been, but was not, presented to the Labor Board." *Sears, Roebuck,* 436 U.S. at 197, 98 S.Ct. at 1757. That is precisely the situation here. Platt could have brought to the NLRB the specific claim asserted in this lawsuit—that he was

fired for making job safety complaints. Moreover, from a remedial standpoint, Platt's lawsuit seeks reinstatement and back pay, so that the court is simply "an alternative forum for obtaining relief that the Board can provide." *Belknap, Inc. v. Hale,* 463 U.S. 491, 510, 103 S.Ct. 3172, 3183, 77 L.Ed.2d 798 (1983). Thus, both the retaliatory misconduct alleged and the remedy sought are directly relevant to the Board's central function, unlike the cases in which a local interest exception has been recognized. *See, e.g., Linn,* 383 U.S. at 63–64, 86 S.Ct. at 663–64.

Finally, it is highly relevant that Platt unsuccessfully sought relief through the grievance process, and directly from the NLRB, before commencing this lawsuit.[7] "The risk of interference with the Board's jurisdiction is ... obvious and substantial" when an unsuccessful charge to the Board is recast as a state law claim. *Local 926, IUOE v. Jones,* 460 U.S. 669, 683, 103 S.Ct. 1453, 1462, 75 L.Ed.2d 368 (1983). As the Eleventh Circuit said in *Parker v. Connors Steel Co.,* 855 F.2d 1510, 1517 (11th Cir. 1988), *cert. denied,* 490 U.S. 1066, 109 S.Ct. 2066, 104 L.Ed.2d 631 (1989):

> We believe that the [*Garmon* preemption] rationale has the greatest validity when a party has sought redress for his claims from the NLRB and in the face of an adverse decision the claims are restructured as state law claims and pursued in state court.

*See also DeSantiago v. Laborers Int'l Union, Local No. 1140,* 914 F.2d 125, 129–130 (8th Cir.1990).

Therefore, on the facts of this case, we conclude that Platt's state law claims are preempted by the NLRA as construed in *Garmon* and its progeny. We do not reach the question whether employee suits seeking redress for violation of state whistle-blower statutes are generally preempted under *Garmon* because we believe the "local interest" exception to *Garmon* preemption requires a more fact-sensitive ap-

---

7. *Paige v. Henry J. Kaiser Co.,* 826 F.2d 857, 862 (9th Cir.1987), *cert. denied,* 486 U.S. 1054, 108 S.Ct. 2819, 100 L.Ed.2d 921 (1988), upon which Platt relies, is distinguishable for this reason.

In addition, to the extent *Paige* holds that plaintiffs may avoid *Garmon* preemption simply by choosing "to plead their action as a state claim," we disagree.

proach. Our resolution of the *Garmon* preemption issue also makes it unnecessary to consider the district court's alternative holding that Platt's state law claims are preempted by § 301 of the LMRA.

### III.

After the district court granted summary judgment dismissing the complaint, Platt moved for Rule 11 sanctions against Cooper and its counsel for having argued a choice-of-state-law alternative ground for dismissal that the district court did not reach. At the request of Platt's counsel, an evidentiary hearing was held on this motion. However, little testimony was taken because Platt's counsel was unprepared to deal with attorney client privilege and work product issues that predictably arose when she attempted to question Cooper's attorneys about their motives in pressing the argument in question.

■ At the conclusion of the hearing, the district court denied the motion for sanctions, finding that neither "the defendant [n]or any of its attorneys acted in a manner that was intended or had the effect of harassing or causing unnecessary delay or needless increase in the cost of the litigation." The district court commented that the motion for sanctions appeared to be a misuse of Rule 11, with the result that "a non-dispositive issue ... has turned into the focus of expensive further proceedings between the parties."

Platt has appealed the denial of his motion for sanctions, which we review under the abuse of discretion standard. *See Bryant v. Brooklyn Barbecue Corp.*, 932 F.2d 697, 699 (8th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 638, 116 L.Ed.2d 656 (1991). That appeal is totally without merit. Platt's motion attacked only one argument in Cooper's summary judgment motion; for that reason alone, Rule 11 relief was not warranted. *See Burull v. First Nat'l Bank*, 831 F.2d 788 (8th Cir.1987), *cert. denied,* 485 U.S. 961, 108 S.Ct. 1225, 99 L.Ed.2d 425 (1988). Moreover, Platt's assertions of improper purpose fly in the face of the district court's contrary findings.

■ A far more serious issue is raised by Cooper's motion asking that we impose sanctions against Platt or his counsel for filing this frivolous appeal. Cooper's motion is based upon Fed.R.App.P. 38 and 28 U.S.C. §§ 1912, 1927, which provide ample authority for such sanctions. *See, e.g., Perkins v. Spivey*, 911 F.2d 22, 36 (8th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1309, 113 L.Ed.2d 243 (1991); *U.S. Ind., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1244 (10th Cir.1988).

We have reviewed the transcript of the hearing on Platt's motion in the district court, as well as the briefs on appeal. The transcript unmistakably reveals that Platt's sanctions motion was, in large part, a response to a sanctions order in an unrelated case that Judge Bartlett entered against Platt's counsel in favor of a party represented by the law firm that represents Cooper. At the sanctions hearing, Platt's counsel repeatedly equated these proceedings with that other sanctions proceeding and made repeated accusations of continuing bias and prejudice against Judge Bartlett. On this record, we must agree with Cooper's description of the matter before us:

> In short, this appeal is simply one more chapter in an obsessive vendetta by [Platt's] counsel against Judge Bartlett and attorneys [for Cooper].

The primary victims in this abuse of Rule 11 by Platt's counsel have been the parties to this lawsuit—Platt, whose case against Cooper has been burdened and distracted by an exercise that could do him no good, and Cooper, which has had to defend against a sanctions motion and appeal pursued by an attorney whose motives have little to do with Cooper's defense of Platt's lawsuit.

Under these circumstances, we conclude that Cooper is entitled to sanctions for having to defend a frivolous appeal to the denial of a frivolous motion. However, there is no suggestion that Platt was personally involved in his counsel's "vendetta." Therefore, we deny Cooper's motion for sanctions against Platt. We grant Coo-

per's motion for sanctions against Platt's counsel, who is hereby ordered to pay, personally, the sum of $2,500.00 to Cooper.

In addition, for the reasons stated in part II of this opinion, the judgment of the district court is affirmed.