Cormier v. Simplex Tech.                    CV-98-500-JD   03/04/99

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE

Philip E. Cormier

        v.                                Civil No. 98-500-JD

Simplex Technologies, Inc.


O R D E R

This civil action is before the court on diversity jurisdiction.  Plaintiff Philip E. Cormier asserts a wrongful discharge claim against his employer, Simplex Technologies, Inc., for allegedly terminating his employment in retaliation for his union-organizing activity and his reports of safety violations. Currently before the court is defendant's motion for summary judgment, to which plaintiff objects.[1]


Background

Simplex produces fiber optic telecommunications cable. Cormier worked at Simplex's Portsmouth, New Hampshire, facility from 1978 until his termination on August 24, 1995.  When he began working at Simplex, Cormier joined the International Brotherhood of Electrical Workers union.  After a labor dispute

---

[1]Defendant has also requested oral argument.  As the court does not feel oral argument would be helpful, defendant's request is hereby denied.

in 1986 that led to a company lock-out, Cormier was one of several union employees reinstated pursuant to an agreement with the National Labor Relations Board (NLRB). Shortly after his reinstatement, Cormier became chief steward for the union and remained in that position until the union was decertified in 1989. In 1993 the Teamsters' union attempted to organize Simplex's employees. Cormier was involved in this effort and acted as an observer on behalf of the Teamsters at the union election. In 1995 Cormier was approached by a coworker who asked him to hand out cards on behalf of the Longshoremen's union, and Cormier agreed to do so.

In addition to his union activities, Cormier served on the company safety committee. As a member of the committee, he regularly made management aware of safety problems within the plant. In 1989 he reported the continued existence of various workplace hazards to the Occupational Safety and Health Administration (OSHA). In 1993 Cormier also gave testimony adverse to Simplex in a coworker's Whistleblowers Protection Act hearing before the New Hampshire Department of Labor.

On August 23, 1995, Cormier was asked to perform a "rundown" of the cable on the number 5-3 production line. To perform a rundown, an employee takes a series of physical measurements along the manufacturing line and records the measurements. If the line is operating properly, the measurements will fall within

2

a specified range. If the measurements fall outside this range, it indicates there is a serious problem, and the line must be shut down and the product may have to be discarded. According to Cormier, he performed the rundown in the specified manner and recorded the results.

After Cormier had finished his shift on August 23, a Simplex employee detected a problem with the cable on the number 5-3 production line. Another inspector validated the existence of a nonconformity. Upon investigation, the company determined that the cable line had been set up incorrectly and the mistake had gone undetected for hours, allowing over 3.5 kilometers of nonconforming cable to be produced. The cable had to be scrapped, resulting in a loss of $100,000. Simplex concluded that the eight individuals who had recorded the cable as within the specified range, when in reality there was a large discrepancy, must have entered conforming numbers in the log without physically inspecting and measuring the cable.

As a result of this incident, Simplex decided to terminate all eight employees. These employees were offered the opportunity to resign or to undergo a peer review of the termination. Cormier and three other employees requested peer review, three of the employees resigned, and one accepted his termination. In each case reviewed, the peer review panel decided that termination was the appropriate punishment.

3

On October 23, 1995, plaintiff filed an unfair labor charge with the NLRB alleging that he was terminated in retaliation for his union activities and his previous testimony against the company. After investigating, the NLRB decided not to issue a complaint, concluding that Cormier was "discharged for recording improper measurements on an inspection report resulting in a substantial economic loss to the Employer." Letter of January 4, 1996, from Helaine A. Simmonds, NLRB Acting Regional Director, to Joni N. Esparian, Esq., attached to Defendant's Memorandum of Law in Support of Motion for Summary Judgment. General Counsel of the NLRB denied Cormier's appeal on February 28, 1996. Cormier did not seek further review of the decision.

## Discussion

### 1. Standard of Review

The role of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992)). It is appropriate only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The defendant bears

4

the initial burden of establishing the lack of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 227-28 (1st Cir. 1992).  The court must view the entire record in the light most favorable to the plaintiff, "'indulging all reasonable inferences in that party's favor.'"  Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990), cert. denied, 1112 S. Ct. 2965 (1992).  However, once the defendant has made a properly supported motion for summary judgment, the plaintiff "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56(e)).

2. Garmon Preemption

Simplex argues that Cormier's common-law claim is preempted by the National Labor Relations Act.  29 U.S.C. §§ 157, 158 (1994).  Defendant argues that the doctrine announced by the United States Supreme Court in San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236 (1959), referred to as Garmon preemption, precludes the court from hearing this claim.  Cormier argues that Garmon preemption does not apply at all, and if it does, this case falls within one of the recognized exceptions.

5

In _Garmon_, the Supreme Court held that "when an activity is arguably subject to § 7 or § 8 of the National Labor Relations Act [29 U.S.C. §§ 157, 158], the states as well as the federal courts must defer to the exclusive competence of the NLRB if the danger of state interference with national labor policy is to be averted." _Chaulk Serv., Inc. v. Massachusetts Comm'n Against Discrimination_, 70 F.3d 1361, 1364 (1st Cir. 1995), _cert. denied_, 518 U.S. 1005 (1996). In determining when _Garmon_ preemption applies, "[t]he critical inquiry . . . is not whether the State is enforcing a law relating specifically to labor relations or one of general application but whether the controversy presented to the . . . court is identical to . . . or different from . . . that which could have been, but was not, presented to the Labor Board." _Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters_, 436 U.S. 180, 197 (1978).

Where, as in this case, the plaintiff has already brought his or her complaint to the NLRB, "the [_Garmon_ preemption] rationale has [its] greatest validity . . . ." _Platt v. Jack Cooper Transport, Co._, 959 F.2d 91, 95 (8th Cir. 1992) (quoting _Parker v. Connors Steel Co._, 855 F.2d 1510, 1517 (11th Cir. 1988)). "'The risk of interference with the Board's jurisdiction is . . . obvious and substantial' when an unsuccessful charge to the Board is recast as a state law claim." _Id._ (quoting _Local_

6

926, *International Union of Operating Engineers v. Jones*, 460 U.S. 669, 683 (1983)).

Plaintiff first argues that <u>Garmon</u> preemption only applies when the claim in question involves a collective bargaining agreement. <u>See</u> Plaintiff's Memorandum of Law in Opposition to Motion for Summary Judgment at 6. Plaintiff has apparently confused <u>Garmon</u> preemption with section 301 preemption. "[S]ection 301 [of the Labor Management Relations Act, 29 U.S.C. § 185] preempts a state-law claim, whether founded upon the state's positive or common law, if a court, in passing upon the claim, would be required to interpret the collective bargaining agreement." <u>Filbotte v. Pennsylvania Truck Lines, Inc.</u>, 131 F.3d 21, 26 (1st Cir. 1997), <u>cert. denied</u>, 118 S. Ct. 1806 (1998). Although section 301 preemption displaces state law, unlike <u>Garmon</u> preemption, it does not divest the federal courts of jurisdiction. Thus the law is actually the converse of Cormier's proposition. If this case involved a collective bargaining agreement, the court would have jurisdiction over the claim. <u>See</u> <u>Newspaper Guild of Salem v. Ottaway Newspapers, Inc.</u>, 79 F.3d 1273, 1283 (1st Cir. 1996) ("[W]here a party's conduct gives rise to both a charge of an unfair labor practice and a claimed breach of a collective bargaining agreement, the NLRB and the district court share 'concurrent jurisdiction' . . . ."). Under <u>Garmon</u>, however, the question is whether the claim involves activity that

7

is arguably subject to section 7 or 8; the existence of a collective bargaining agreement is irrelevant. See, e.g., Medeco Security Locks, Inc. v. NLRB, 142 F.3d 733, 745 (4th Cir. 1998) ("[Section 7's] protection applies even to activities that do not involve unions or collective bargaining.").

Section 8(a)(1) of the National Labor Relations Act (NLRA) makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [section 7 of the Act]." 29 U.S.C. § 158(a)(1). Section 7 guarantees employees the right to "form, join or assist labor organizations . . . and to engage in . . . concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. Section 8(a)(3) provides that it is an unfair labor practice for an employer "by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization . . . ." 29 U.S.C. § 158(a)(3).

Cormier's claim that Simplex terminated his employment in retaliation for his union activities is clearly within the purview of sections 7 and 8 of the NLRA. The question is whether the other activities for which he alleges he was retaliated against were "concerted activities for the purpose of . . mutual aid or protection." 29 U.S.C. § 127.

8

"As the Supreme court has noted, '[t]he term "concerted activity" is not defined in the Act . . . .'" NLRB v. Portland Airport Limousine Co., 163 F.3d 662, 665 (1st Cir. 1998) (quoting NLRB v. City Disposal Systems, 465 U.S. 822, 830 (1984)). When employees act together, they clearly satisfy the concerted activity requirement; courts, however, have also found that individual actions can be "concerted activity" in some circumstances. See id. An individual acting alone may be engaged in concerted activity "if the action is 'engaged in with or on the authority of other employees, and not solely by and on behalf of the employee himself.'" Id. (quoting Meyers Indus., Inc. v. Prill, 268 NLRB 493, 493 (1984)). This standard "'encompasses those circumstances where individual employees seek to initiate or to induce or to prepare for group activity, as well as individual employees bringing truly group complaints to the attention of management.'" Id. (quoting Meyers Indus., Inc. v. Prill, 281 NLRB 882, 887 (1988) (Meyers II)). Thus, when an individual acts as a representative of other employees, his or her actions will be protected concerted activity. See Rita Gail Smith and Richard A. Parr II, *Protection of Individual Action as "Concerted Activity" Under the National Labor Relations Act*, 68 CORNELL L. REV. 369, 379 (1983).

To fall within the ambit of section 7's protection, an activity, in addition to being a concerted activity, must satisfy

the mutual aid and protection clause of section 7. In "City Disposal, supra, the Supreme Court regarded proof that an employee action inures to the benefit of all . . . as proof that the action comes within the 'mutual aid or protection' clause of section 7." Myers II, supra, 281 NLRB 882, 1986 WL 54414 at *7. "[T]he mutual aid or protection clause was intended broadly to protect activities beyond grievance settlement, collective bargaining and self-organization. It also extends to protect employees' efforts to 'improve their lot as employees through channels outside the immediate employee-employer relationship.'" NLRB v. Coca-Cola Bottling Co., 811 F.2d 82, 88 (2d Cir. 1987) (quoting Eastex, Inc. v. NLRB, 437 U.S. 556, 565 (1978)).

In this case, it appears that the conduct Cormier complains of is governed by sections 7 and 8. The court finds no force to Cormier's contention that the NLRB does not have jurisdiction over "employee reports to OSHA and retaliatory discharge for serving on a company safety committee and policy review committee where the employee is an activist for company accountability and fairness." See Systems with Reliability, Inc., 322 NLRB 757, 1996 WL 740890 at *8 (1996) (finding discharging employee who threatened to complain to OSHA was prohibited by section 7 because statement was part of concerted effort to improve safety and health in workplace). First, Cormier's safety-related complaints to the company and to OSHA were made in the context of

10

his participation on the safety committee, and thus were concerted activity. As a member of the safety committee, Cormier was clearly acting on behalf of other employees, with their knowledge and consent.[2] These complaints clearly satisfy the mutual aid and protection clause as well.

Similarly, Cormier's testimony against the company was given on behalf of another employee. The fact that Cormier did so under subpoena does not take the testimony outside section 7's protection. See id. In a similar case, the United States Court of Appeals for the Second Circuit upheld the NLRB's finding that being willing to testify in a criminal trial on behalf of a co-employee was protected activity under section 7, despite the employer's argument that the fact that the testifying employee was subpoenaed took the act outside the realm of protected activity. See id. at 89. Thus it is clear that the conduct of which Cormier complains is at least arguably subject to sections 7 and 8 of the NLRA. Furthermore, the fact that Cormier has already brought an essentially identical complaint to the NLRB alleging violations of section 8(a)(1) and 8(a)(3) belies his current contention that this action is not governed by the NLRA.

Cormier's final argument is that this case falls within one of the "three generally recognized exceptions to the NLRB's

_____

[2]Indeed, plaintiff's complaint states that he acted "on behalf of his coworkers."

11

primary jurisdiction."  Tamburello v. Comm-Tract Corp., 67 F.3d

973, 977 (1st Cir. 1995), cert. denied, 116 S. Ct. 852 (1996).

> The first is where Congress has expressly carved out an exception to the NLRB's primary jurisdiction. . . .
>
> The second exception applies when the regulated activity touches "interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction," courts "could not infer that Congress had deprived the States of the power to act."
>
> The third exception holds that the NLRB's exclusive jurisdiction does not apply if the regulated activity is merely a peripheral or collateral concern of the labor laws.

Id. (quoting Sears Roebuck, supra, 436 U.S. at 195).

Cormier first argues that this case falls within the third

exception for activities that are a peripheral or collateral

concern of the labor law.  See id.  To determine whether a case

falls within this exception, the court "focus[es] on the conduct

at the root of this controversy . . . ."  Chaulk Serv., Inc.,

supra, 70 F.3d at 1365.  In this case it is clear that the

conduct in question is "[t]he very same conduct [that] provides

the factual basis for the unfair labor practice charge . . . ."

Id.  Furthermore, the protection of an employee's right to engage

in concerted activities to improve health and safety in the

workplace is not a peripheral concern of the NLRB.  "Rather, the

Board's authority to remedy such practices is central to its

purpose."  Id.  The fact that the NLRB did not issue a charge in

12

this case is not significant.  <u>See</u> Plaintiff's Memorandum of Law in Opposition to Motion for Summary Judgment at 9.  The NLRB did not find that it lacked jurisdiction over Cormier's claims, but rather decided on the merits that there was no violation of the NLRA.  If Cormier disagreed with its decision, the appropriate avenue for redress would have been to seek judicial review.  <u>See</u> 29 U.S.C. § 160(f) ("Any person aggrieved by a final order of  the Board . . . may obtain a review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in . . . .").

Cormier's final argument is that this case falls within the related so-called local interests exception.  This

> exception hinges, in the first place, upon the
> existence of a significant state interest in protecting
> its citizens from the challenged conduct.  In [the]
> second place, the controversy which could be presented
> to the state court must be different from that which
> could have been presented to the NLRB. . . .   [T]he
> critical inquiry is whether the controversy presented
> to the state court is identical to or different from
> that which could have been presented to the NLRB.

<u>Chaulk Serv. Inc.</u>, <u>supra</u>, 70 F.3d at 1366.  In this case it is abundantly clear that the instant case is identical to that which

13

was presented to the NLRB.[3]  The local interests exception therefore cannot apply.


## Conclusion

For the abovementioned reasons, defendant's motion for summary judgment (document 6) is granted.  The clerk is ordered to close the case.

SO ORDERED.


_____
Joseph A. DiClerico, Jr.
District Judge

March 4, 1999

cc:  Joni N. Esperian, Esq.
     Steven E. Grill, Esq.

_____

[3]Cormier's complaint to the NLRB stated, "[Cormier] has previously testified against the company in another employee's State Whistleblower statute hearing.  He has also testified against the employer in OSHA proceedings. . . .  The employee charges that the stated reasons for termination:  intentional falsification of a company record and negligence resulting in inferior work, are a pretext for firing the employee for his history of Union support and his recent agreement to hand out Union organizing cards.  It is retaliation for the employee having testified against the employer on more than one occasion." Exhibit E to Affidavit of John Conley, attached to Defendant's Motion for Summary Judgment.  Similarly, plaintiff's complaint in the instant action states, "the defendant did with malice, bad faith and in retaliation terminate the plaintiff's employment . . . for his having engaged in years of Union organizing activity and having made health and safety complaints to [OSHA] and for challenging the defendant's employment practices as unfair, unjust or unlawful on behalf of his coworkers." Attachment to Notice of Removal.

14