**Marc Joseph PIA, Plaintiff,**

v.

**URS ENERGY & CONSTRUCTION, INC. and AECOM, a corporation, Defendants.**

3:16–cv–00045

United States District Court, S.D. Iowa, Eastern Division.

Signed 01/04/2017

Colleen G. DeRosa, Ogletree Deakins Nash Smoak & Stewart PC, Chicago, IL, Brian Lee McDermott, Ogletree Deakins Nash Smoak & Stewart PC, Indianapolis, IN, for Defendants.

Marc A Humphrey, Humphrey Law Firm, P.C., Des Moines, IA, for Plaintiff.

## ORDER

ROBERT W. PRATT, Judge U.S. DISTRICT JUDGE

Before the Court is a Motion to Dismiss filed by URS Energy & Construction, Inc. and AECOM (collectively "Defendants") on August 30, 2016. Clerk's No. 7. Marc Joseph Pia ("Plaintiff") filed a resistance on September 26, 2016. Clerk's No. 15. Defendants filed a reply on November 7, 2016. Clerk's No. 18. This Court heard oral arguments on the motion on December 22, 2016. Clerk's No. 22. The matter is fully submitted.

## I. FACTUAL BACKGROUND

Plaintiff filed a Complaint with this Court on June 1, 2016. Clerk's No. 1. The Complaint alleges the following facts. Defendants hired Plaintiff through his local union to work on a construction project in Wever, Iowa. *Id.* at 3. On the work site, Defendants conducted daily safety meetings, which Plaintiff attended. *Id.* On February 14, 2015, during and after the safety meeting, Plaintiff raised several safety concerns he and his fellow employees had with the work site with the support of his foreman, Jerry Oppat. *Id.* at 5. Plaintiff told his supervisors that "safety was the concern of every worker" and accused Defendants of violating safety standards established by both the federal and state Occupational Safety and Health Acts ("OSHA"). *Id.* Plaintiff's supervisor instructed Plaintiff to stop raising work-site safety concerns and threatened to terminate his employment if he persisted in doing so. *Id.* Plaintiff insisted that "he should be allowed to bring up safety ... at any point in time when he saw what amounted to an unreasonable risk of injury to himself or other workers." *Id.* at 6. In the days that followed, Defendants falsely accused Plaintiff of leaving work early. *Id.* The threat of termination was repeated on

February 28 when Plaintiff continued to voice concerns. *Id.* at 7. On March 2, Plaintiff's employment was terminated purportedly for "willful or gross negligence of security, safety or fitness for duty rules and regulations." *Id.* The Complaint claims Defendants are liable in tort for "wrongful discharge ... for reasons contrary to public policy" under Iowa common law. *Id.* at 8–9; *see Jasper v. Nizam, Inc.*, 764 N.W.2d 751, 761 (Iowa 2009) (discussing Iowa's wrongful discharge cause of action).

## II. PROCEDURAL POSTURE

Defendants now move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing Plaintiff has "fail[ed] to state a claim upon which relief can be granted." In considering such a motion, this Court must "accept all factual allegations in the complaint as true." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007). The factual allegations need not be detailed, but need only set out the grounds of Plaintiff's entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A complaint cannot be predicated merely upon conclusory statements of liability or a "formulaic recitation of the elements of a cause of action." *Id.* The complaint must set out a "plausible claim for relief [to] survive[ ] a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

In this case, Defendants do not claim Plaintiff's factual allegations are insufficient to survive a motion to dismiss. Instead, Defendants' asserted ground for dismissal is jurisdictional in nature. See Clerk's No. 7–1 at 8. They argue that on the facts of this case, the state tort claim of wrongful discharge is preempted by controlling federal law, divesting the state of jurisdiction to regulate the conduct on which Plaintiff's claim is based. *See generally* Kristine Cordier Karnezis, Annotation, *Preemption of State–Law Wrongful Discharge Claim by National Labor Relations Act (29 U.S.C.A. §§ 151 et seq.)*, 190 A.L.R. Fed. 323 (2003) (summarizing the preemption doctrine in the context of wrongful discharge claims and collecting cases). The allegedly preemptive federal law is § 8 of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158. The parties agree that the issue of NLRA preemption—also known as *Garmon* preemption, *see San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959)—is the only legal matter to be decided on the present motion.

## III. APPLICABLE LAW

■ The preemptive effect of the NLRA was first articulated in *Garmon*: "When an activity is arguably subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." 359 U.S. at 245, 79 S.Ct. 773. Therefore, "state regulations and causes of action are presumptively preempted if they concern conduct that is actually or arguably either prohibited or protected by the [NLRA]." *Belknap, Inc. v. Hale*, 463 U.S. 491, 498, 103 S.Ct. 3172, 77 L.Ed.2d 798 (1983).

Defendants assert Plaintiff's statements to his supervisors regarding work-site safety are "concerted activities for the purpose of ... mutual aid or protection" and thus a protected activity under 29 U.S.C. § 157 (NLRA § 7). They further assert the termination of Plaintiff's employment in retaliation for his participation in that concerted activity is in turn prohibited by 29 U.S.C. § 158 (NLRA § 8), which provides, "It shall be an unfair labor practice for an employer ... to interfere with, restrain, or coerce employees in the exercise

of the rights guaranteed in section 157 of this title."

However, even if Defendants' conclusion that the termination was prohibited by NLRA § 8, there are a number of exceptions to *Garmon*'s preemption rule that may permit Plaintiff to pursue his action under Iowa law. *See id.* at 533 n.7, 103 S.Ct. 3172 (Brennan, J., dissenting) (discussing the exceptions and cases in which they have been applied). In this case, one pertinent exception permits states to regulate conduct that is typically subject to *Garmon* preemption but that "touch[es] interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, [courts cannot] infer that Congress [has] deprived the States of the power to act." *Garmon*, 359 U.S. at 244, 79 S.Ct. 773.

For the reasons discussed herein, this Court ultimately concludes that prohibiting employers from discharging employees in retaliation for raising issues of physical safety is a matter "touching interests ... deeply rooted in local feeling and responsibility." *See id.* Therefore, the Court assumes without deciding that Plaintiff's actions were protected under NLRA § 7 and that Defendants' actions were prohibited under NLRA § 8 and proceeds to analyze the applicable exception to *Garmon* preemption.[1]

## IV. ANALYSIS

■ Having presumed the Complaint "satisfies the threshold test for *Garmon*

preemption," *see Platt v. Jack Cooper Transp., Co.*, 959 F.2d 91, 94–95 (8th Cir. 1992), this Court must determine whether Iowa's common law cause of action for "wrongful discharge for reasons contrary to public policy" is excepted from the preemption doctrine. *Jasper*, 764 N.W.2d at 761. The Supreme Court delineated one exception concurrently with its holding that the NLRA had a preemptive effect:

[D]ue regard for the presuppositions of our embracing federal system, including the principle of diffusion of power not as a matter of doctrinaire localism but as a promoter of democracy, has required us not to find withdrawal from the States of power to regulate where ... the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act.

*Garmon*, 359 U.S. at 243–44, 79 S.Ct. 773.

Since *Garmon*, the Supreme Court has applied that exception a number of times to hold that a state-law cause of action was not preempted by the NLRA. *See Sears, Roebuck & Co. v. San Diego Cty. Dist. Council of Carpenters*, 436 U.S. 180, 198, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978) (holding state trespass law was not preempted); *Farmer v. United Bhd. of Carpenters and Joiners of Am.*, 430 U.S. 290, 304, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977) (holding tort of intentional infliction of emotional distress (IIED) was not preempted); *Linn v.*

1. Though the applicability of §§ 7 and 8 need not decided at this stage, Defendants assert one claim on the matter that should be addressed. Defendants assert that *Garmon* preemption prohibits the initiation of this action in tort because worksite safety is a bargained-for right found in the collective bargaining agreement (CBA) controlling Plaintiff's employment as a union employee. However, if the existence of a safety clause in a CBA is a triggering fact requiring application of the

NLRA and *Garmon* preemption, then non-union employees would receive the benefit of the availability of a state-law cause of action that is unavailable to their union counterparts. Such a result is antithetical to the legislative purposes of the NLRA, and therefore the existence of the CBA cannot be a factor in preempting a claim if a nonunion employee's similar claim would not be preempted. *See* 29 U.S.C. § 151.

*United Plant Guard Workers of Am.*, 383 U.S. 53, 64–65, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966) (holding defamation action was not preempted).

■ To determine whether regulated conduct touches interests deeply rooted in local feeling and responsibility such that state law is not preempted, a court must first consider whether there is "a significant state interest in protecting the [employee] from the challenged conduct." *Sears*, 436 U.S. at 196, 98 S.Ct. 1745. Second, it must consider the level of "risk of interference with the regulatory jurisdiction of the Labor Board." *Id.* Once those two considerations have been measured, the court must balance them against each other before ultimately concluding whether the state law is preempted. *See Farmer*, 430 U.S. at 304, 97 S.Ct. 1056 ("[The] potential for interference is insufficient to counterbalance the legitimate and substantial interest of the State in protecting its citizens.")

■ First, as to a state's interest in protecting employees from retaliatory termination for raising workplace-safety concerns,[2] the Court concludes that occupational health and safety is a "legitimate and substantial interest of [a] State." *Id.* Congress, in enacting the federal OSHA provisions, *see* 29 U.S.C. ch. 15, expressly stated in its declaration of policy that the law was intended to "encourage[e] the States to assume the fullest responsibility for the administration and enforcement of their occupational safety and health laws ... [and] to improve the administration and enforcement of State occupational safety and health laws." 29 U.S.C. § 651(b)(11). Congress further expressly

permitted states to enact their own local OSHA provisions:

> Any State which, at any time, desires to assume responsibility for development and enforcement therein of occupational safety and health standards relating to any occupational safety or health issue with respect to which a Federal standard has been promulgated ... shall submit a State plan [to be approved by the Secretary of Labor] for the development of such standards and their enforcement.

29 U.S.C. § 667(b).

Iowa's legislature enacted its own state OSHA provisions in 1972. *See* Iowa Code ch. 88. That statute provides,

> It is the policy of this state to assure so far as possible every working person in the state safe and healthful working conditions and to preserve human resources by [e]ncouraging employers and employees in their efforts to reduce the number of occupational safety and health hazards at their places of employment, and to stimulate employers and employees to institute new and perfect existing programs for providing safe and healthful working conditions.

Iowa Code § 88.1.

■ The Iowa Supreme Court later concluded that an employee who is terminated in retaliation for raising workplace-safety concerns may pursue a wrongful discharge claim in accordance with the state's OSHA provisions and Iowa's "policy of encouraging employees to improve workplace safety." *George v. D.W. Zinser Co.*, 762 N.W.2d 865, 872 (Iowa 2009); *see Kohrt v. MidAmerican Energy Co.*, 364

**2.** Notably, most caselaw cited by Defendants in support of their motion is distinguishable from the present case on this issue because it concerns different kinds of prohibited conduct and thus represent inapplicable analyses of a state's regulatory interest. *See, e.g., Hus-*

*saini v. Gelita USA, Inc.*, 749 F.Supp.2d 909, 921 (N.D. Iowa 2010) (concerning wrongful discharge in relation to a union decertification election procedure and the aftermath of decertification).

F.3d 894, 902 (8th Cir. 2004) (correctly predicting that "if presented with the issue, the Supreme Court of Iowa would conclude that an employee may bring a common law wrongful discharge suit premised on a violation of Iowa's public policy"). The common law wrongful discharge cause of action is *parallel* to statutory causes of action; neither is an exclusive remedy under Iowa law. *See George*, 762 N.W.2d at 872 ("The fact that the statute creates an administrative remedy does not indicate such a remedy is exclusive.").

Defendants argue that the alleged conduct in this case—termination in retaliation for workplace safety complaints—is distinguishable from the torts the United States Supreme Court has previously excepted from *Garmon* preemption, such as IIED and defamation. At oral argument, Defendants' counsel categorized the excepted torts as "more personal" than retaliatory termination, involving "threats of violence, abuse, intimidation." Plaintiff's counsel responded that Plaintiff in fact *had* been threatened and intimidated by his supervisors as he persisted in raising safety concerns, narrowing the gap between excepted torts and the present wrongful discharge action.

Ultimately, this Court rejects the notion that a state's interest in maintaining physically safe workplaces for in-state employees by proscribing retaliatory termination is significantly lesser than its interest in preventing emotional harm by proscribing IIED and defamation. It further rejects Defendants' suggestion that the state of Iowa has no interest in providing for Plaintiff's safety simply because he is not a permanent Iowa resident and brings his claim in federal court under diversity jurisdiction. To the contrary, the state of Iowa has a substantial and legitimate state interest in ensuring the physical safety of *all* workplaces within the state,[3] not only ones populated exclusively by Iowa residents or Iowa union members.

Next, this Court must determine the level of the "risk of interference with the regulatory jurisdiction" of the National Labor Relations Board ("NLRB") if the state-law claim were to proceed. *Sears*, 436 U.S. at 196, 98 S.Ct. 1745. Because the level of risk is highly case-dependent, this determination "requires a more fact-sensitive approach." *Platt*, 959 F.2d at 95. The critical inquiry in evaluating the level of risk is "whether the controversy presented to the ... court is identical to ... or different from ... that which could have been ... presented to the Labor Board." *Sears*, 436 U.S. at 197, 98 S.Ct. 1745.

Defendants assert this Court should apply the Eighth Circuit's reasoning in *Platt*

---

**3.** The Supreme Court has previously considered the interaction of the NLRA's provisions with states' police powers:

[T]here is no suggestion in the legislative history of the [NLRA] that Congress intended to disturb the myriad state laws then in existence that set minimum labor standards, but were unrelated in any way to the processes of bargaining or self-organization. To the contrary, we believe that Congress developed the framework for self-organization and collective bargaining of the NLRA within the larger body of state law promoting public health and safety. *The States traditionally have had great latitude under their police powers to legislate as "to the protection of the lives, limbs, health, comfort, and quiet of all persons." "States possess broad authority under their police powers to regulate the employment relationship to protect workers within the State.* Child labor laws, minimum and other wage laws, laws affecting occupational health and safety ... are only a few examples." *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 756, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985) (emphasis added) (citations omitted) (first quoting *Slaughter–House Cases*, 83 U.S. 36, 16 Wall. 36, 62, 21 L.Ed. 394 (1873); then quoting *DeCanas v. Bica*, 424 U.S. 351, 356, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976)).

to assess the risk of interference with the jurisdiction of the NLRB presented by Plaintiff's claim. *Platt*, 959 F.2d at 95–96. Defendants conceded at oral argument, however, that *Platt* is not controlling due to distinguishable facts. This Court concludes that the factual distinctions between the present case and *Platt* are so substantial that a different outcome is required.

In *Platt*, the Eighth Circuit identified three factual circumstances that elevated the risk of interference with the NLRB's regulatory jurisdiction. First, the basic factual assertions—"that [the plaintiff] was fired for making job safety complaints"—"could have [been] brought to the NLRB" *Id.* at 95. Second, "from a remedial standpoint," the plaintiff sought reinstatement and back pay, reducing the court to "simply 'an alternative forum for obtaining relief that the Board can provide.'" *Id.* (quoting *Belknap*, 463 U.S. at 510, 103 S.Ct. 3172). And third, the plaintiff "unsuccessfully sought relief through the grievance process, and directly from the NLRB, before commencing this lawsuit." *Id.* Of these three factors, the Eighth Circuit considered the third to be the most important. *Id.* It described the plaintiff's failed claim before the NLRB as "highly significant" and held, "[T]he [*Garmon* preemption] rationale has the greatest validity when a party has sought redress for his claims from the NLRB and in the face of an adverse decision the claims are restructured as state law claims and pursued in state court." *Id.* (quoting *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1517 (11th Cir. 1988)).

Analyzing the analogous circumstances and weighing those three factors in the present case, the Court concludes Plaintiff's Complaint poses a much lower risk of interfering with the NLRB's jurisdiction than did the lawsuit in *Platt*. Though the first factor—whether Plaintiff could have brought a claim before the NLRB on the alleged facts—weighs lightly in favor of preemption, it is also the most broad and least informative factor.

The second factor, on the other hand, weighs against preemption. Plaintiff makes a claim for past and future lost wages, which is relief the NLRB could have provided. Clerk's No. 1 at 9. However, the Complaint also asserts claims for "past [and] future emotional distress and mental anguish," "past [and] future harm to [Plaintiff's] reputation," and "any additional element of loss recognized as being recoverable under this theory of recovery." *Id.* When the Supreme Court applies the local-feeling-and-responsibility exception, it gives significant weight to a claim for relief that is outside the scope of the NLRB's remedial power. *See Linn*, 383 U.S. at 63, 86 S.Ct. 657 ("The Board's lack of concern with the 'personal' injury . . ., together with its inability to provide redress to the maligned party, vitiates the ordinary arguments for pre-emption."); *Farmer*, 430 U.S. at 304, 97 S.Ct. 1056 ("Whether the . . . conduct . . . caused . . . severe emotional distress . . . would play no role in the Board's disposition of the case, and the Board could not award . . . damages for pain [or] suffering . . . ."). Even though Plaintiff's complaint includes allegations that, "standing alone, might well be pre-empted as the exclusive concern of the Board," his concurrent claims for relief that the NLRB is unable to provide weigh against preempting his claim as a whole. *Farmer*, 430 U.S. at 303–04, 97 S.Ct. 1056.

As to the third factor, it is not contested that Plaintiff never initiated a claim against Defendants before the NLRB. Therefore, the "highly significant" circumstance of a failed NLRB grievance proceeding is not present in this case. *See Platt*, 959 F.2d at 95. Nevertheless, Supreme Court caselaw indicates that the

failure to present a case before the NLRB, no matter the circumstances of such failure, does not weigh *against* preemption.[4] *See Sears*, 436 U.S. at 197, 98 S.Ct. 1745 (noting that where a claimant took no action before the NLRB, "[t]he critical inquiry [is] whether the controversy presented to the state court is identical to ... or different from ... that which could have been, *but was not*, presented to the Labor Board" (emphasis added)). Plaintiff's failure to bring his claim before the NLRB provides no additional weight in favor of preemption beyond the first factor already considered—i.e., the simple matter of whether he could have done so. The third factor, which significantly tipped the scale in *Platt*, has far less analytic force in balancing the scales in the present case.

In sum, Plaintiff could have pursued some relief from the NLRB on the facts alleged in his Complaint. However, many of his requested remedies are outside the NLRB's power to provide. As a result, this Court concludes the level of risk of interfering with the NLRB's jurisdiction is negligible with respect to those requested remedies. Though there may be aspects of Plaintiff's claims that "will touch on an area of primary federal concern," that possibility "is insufficient to counterbalance the legitimate and substantial interest of the State" in ensuring safe workplaces for employees working throughout Iowa. *See Farmer*, 430 U.S. at 303–04, 97 S.Ct. 1056. Defendants' motion to dismiss is simply too blunt a procedural instrument with which to manage the more delicate interplay between the NLRA and Iowa's wrongful discharge tort law.

## V. CONCLUSION

Even presuming Plaintiff's Complaint implicates conduct prohibited by NLRA § 8, this Court is compelled to deny Defendants' motion to dismiss. The Court concludes Iowa has a legitimate and substantial interest in maintaining the physical safety of employees throughout the state and the level of risk of interfering with the NLRB's exclusive jurisdiction as to a number of Plaintiff's requested remedies is negligible. *See Farmer*, 430 U.S. at 302, 97 S.Ct. 1056 ("[I]nflexible application of the [*Garmon*] doctrine is to be avoided, especially where the State has a substantial interest in regulation of the conduct at issue and the State's interest is one that does not threaten undue interference with the federal regulatory scheme."). In other words, "the regulated conduct touche[s] interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, [this Court will] not infer that Congress ha[s] deprived the States of the power to act." *Garmon*, 359 U.S. at 244, 79 S.Ct. 773. Defendants' Motion to Dismiss is therefore DENIED.

IT IS SO ORDERED.

---

**4.** Indeed, Defendants point to two cases in which *Garmon* preemption applied even though the claimants pursued no action before the NLRB. *See Williams v. Comcast Cablevision of New Haven, Inc.*, 322 F.Supp.2d 177, 188 (D. Conn. 2004); *Londono v. AMB* *Janitorial Servs.*, No. 13–cv–3539, 2014 WL 7146993, at *1 (D.N.J. Dec. 12, 2014). These cases are factually distinguishable from the present case, and they merely demonstrate the fact that a claim not presented to the NLRB *can* be preempted, not that it *must* be.